IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ANTONIO GALLEGOS, KRISTIAN
PETTINE, ANDRE GALLEGOS, and
K.L.P.L., a minor child,

        Plaintiffs,                        Case No. 12-CV-00224 LH/KBM

v.

CITY OF ESPANOLA, a municipal corporation,
JOE MARTINEZ, individually and in his official
capacity; JEREMY APODACA, individually and
in his official capacity; ROBERT VIGIL,
individually and in his official capacity; CITY OF
ESPANOLA OFFICERS and SUPERVISORS
JOHN DOES 1 THROUGH 10, individually and in
their official capacities, CAMILLE SCARCELLA,
individually and in her official capacity; and STATE
OF NEW MEXICO, CYFD, EMPLOYEES and
SUPERVISORS JOHN DOES 1 through 10,
individually,

        Defendants.

## CITY OF ESPANOLA DEFENDANTS' MOTION TO STRIKE WITNESSES AND EXHIBITS PROVIDED AS PART OF PLAINTIFF PETTINE'S THIRD AND FOURTH SUPPLEMENTAL RESPONSES TO DEFENDANT CITY OF ESPANOLA'S FIRST SET OF REQUESTS FOR PRODUCTION

**COME NOW** the Defendants City of Espanola, Joe Martinez, Jeremy Apodaca, Robert Vigil, City of Espanola Officers and Supervisors John Does 1 through 10 (hereinafter, "City Defendants"), by and through its counsel of record, Basham & Basham P.C. (Mark Basham), and hereby move for an Order striking certain of Plaintiffs' witnesses and certain exhibits provided as part of Plaintiff Pettine's Third and Fourth Supplemental Responses to Defendant's First Set of Requests for Production. Opposing counsel was not contacted as due to the nature of this motion it is presumed that Plaintiffs oppose this motion.

Defendants certify that they have conferred in good faith with counsel for Plaintiff in an attempt to resolve this dispute, but have been unsuccessful. (See *Exhibit1*, Letter dated July 18, 2013 to Nathaniel Thompkins, Esq.; *Exhibit 2*, Letter dated July 22, 2013 to Nathaniel V. Thompkins, Esq.; *Exhibit 3*, Letter dated August 12, 2013 from Nathaniel V. Thompkins. Based on Plaintiffs' counsel's letter dated August 12, 2013 (*Exhibit 3*), Plaintiff opposes the relief requested herein. In support of its Motion, Defendant states as follows:

## I. INTRODUCTION

This action was filed on March 5, 2012. Plaintiffs filed a First Amended Complaint on March 23, 2012 and a Second Amended Complaint on March 25, 2012. Service on the City of Espanola defendants for the Second Amended Complaint was not made until May 10, 2012.

Plaintiffs' complaint arises out of the events following City of Espanola Police Officers responding to a 911 call on July 31, 2010 at the residence and business of Plaintiff Antonio Gallegos. Plaintiffs allege that without basis the Espanola police officers accused the adult Plaintiffs of being intoxicated and endangering the life of Plaintiff K.L.P.L., a minor. The officers, using excessive force and without probable cause, arrested the Plaintiffs. Following Plaintiff Pettine's arrest, she lost custody of K.L.P.L.

Defendants contend that the adults at the scene were noticeably intoxicated. The young child K.L.P.L was wearing nothing but an obviously soiled and thick, heavy diaper. Guns were found at the scene, some loaded and accessible to K.L.P.L. (*Exhibit 4*, Uniform Incident Report, July 31, 2010.)

Antonio Gallegos (husband of Plaintiff Pettine and stepfather to K.L.P.L) was arrested after he committed battery on one of the police officers at the scene. Plaintiff Pettine was

arrested for resisting, evading or obstructing an officer and the other adults were taken into custody for detoxification. Andre Gallegos, also a minor, was taken to the Youth Shelter for protective custody. The minor K.L.P.L was taken by ambulance to the Espanola Hospital for a medical evaluation. CYFD then took custody of K.L.P.L. as Pettine refused to provide information as to the child's biological father, who was later found to share custody of K.L.P.L. (See *Exhibit 4*, Incident Report.)

## PROCEDURAL HISTORY

On October 25, the Court entered its Initial Scheduling Order. Per the Order, initial disclosures were to be made by December 19, 2012. Plaintiffs filed a Certificate of Service on December 19th alleging to have timely made their initial disclosures, but these were not received by City Defendants' counsel until well after that date. Further, in violation of Fed. Rule Civ. P. 26 (a)(1)(A), Plaintiff Pettine failed to provide a complete list of Plaintiff's health care providers and therapists, a fact that City Defendants learned during her deposition taken on June 21, 2013. Nor did Plaintiff provide a copy of or description by category and location of documents that may be used to support her claims as required by Fed. R. Civ. P. Rule 26(a)(1), which provides that:

- (A) In General. … a party must, without awaiting a discovery request, provide to the other parties:

    (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

    (ii) a copy – or a description by category and location – of all documents electronically stored information, and tangible things that the disclosing party has in its possession, custody or control and may use to support its claims or defenses, unless the use would be solely for impeachment."

Pursuant to the Scheduling Order entered by the Court on December 19, 2012, discovery was to end on May 6, 2013. At Plaintiffs' subsequent request, the discovery deadline was extended to July 5, 2013.

### III. ARGUMENT

City Defendants seek to strike all medical records provided by Plaintiffs after June 21, 2013 and Plaintiffs' expert report prepared by Edward Mament from being used by Plaintiffs at trial or as exhibits in this matter at trial, and to strike Plaintiffs' identified expert witness, Edward Mament, from testifying at trial in this matter, along with the following treating or evaluating health care providers to Plaintiff Kristian Pettine: Mary Baca, Samuel Roll, Ph.D., Dr. Porterfield, Jane Levy, Maureen Pelikoff, and Bob Galligan.

The basis for City Defendants' motion to strike these documents as exhibits and to strike Plaintiff Pettine's identified treating or evaluating mental health care providers from testify at trial is based on Plaintiff Pettine's failure to timely provide the medical records that were requested in written discovery, failure to timely identify and provide contact information for the mental health care providers and failure to execute a provided medical release to enable City Defendants to collect medical records from her health care providers, in violation of discovery rules.

The basis for City Defendants' motion to strike Plaintiffs' expert witness, Edward Mament, and the use of his report in any manner is Plaintiffs' refusal to have their expert supplement his report to provide the basis for his conclusions, how he would have handled the situation, that is the basis of Plaintiffs' complaint, differently than was done by Defendant Espanola police officers, and supplement his report after having viewed additional evidence of the incident, all as required by Rule 26(e)(1), (2) and (A). These bad faith deficiencies on the

4

part of Plaintiffs and City Defendants attempts to resolve the matters are set out in greater detail below.

1. **Defendant's First Set of Interrogatories Nos. 10, 15 and 20 and Requests for Production Nos. 2, 3, 6, 8 and 9 and Medical, Employment and Educational Releases**

On January 11, 2013, City Defendants propounded their First Set of Interrogatories and First Set of Requests for Production on Plaintiff Pettine. Attached to the Requests for Production were medical, employment and educational releases for Ms. Pettine's signature. At Plaintiff's request, the due date for her answers and responses was extended to February 27, 2013; Plaintiff failed to meet that deadline, mailing her answers and responses to City Defendants on February 27th. In spite of the extended deadline, many of Plaintiff's answers and responses were incomplete; in fact, Plaintiff's initial answers to interrogatories were never received by City Defendants. The first answers from Plaintiff Pettine they received was her Supplemental Answers, mailed on May 17, 2013.

Still, Plaintiff Pettine's Answers were deficient as to interrogatory numbers 10, 15 and 20, as were her responses to requests for production ("RFP") numbers 2, 3, 6, 8 and 9. (See *Exhibit 1; Exhibit 5*, Plaintiff Pettine's First Supplemental Answers to City Defendants' First Set of Interrogatories to Plaintiff Pettine, Nos. 10, 15 and 20; *Exhibit 6*, Plaintiff Pettine's Responses to City Defendants' First Set of RFP to Plaintiff Pettine, Nos. 2, 3, 6, 8 and 9; and *Exhibit 7*, Plaintiff Pettine's First Supplement Response to City Defendants' First Set of RFP, Nos. 2, 3, 6, 8 and 9.)

Interrogatory 10 and 15 of City Defendants' First Set of Interrogatories to Plaintiff Pettine, request Ms. Pettine to provide the names, addresses and phone numbers of all her current and past counselors and health care providers, respectively; interrogatory 20 asks that she provide an itemized account of all losses and expenses she claims resulted from the alleged

occurrence. Her answers were incomplete as to her current providers, and she refused to provide names of any past providers; further she failed to provide the addresses and telephone numbers of identified current providers, nor did she provide an itemized accounting, as requested in interrogatory 20. (See *Exhibit 5.*)

Request for Production 2 requested Plaintiff Pettine to provide copies of documents relating to her answer to interrogatory 10, her current health care providers; RFP 3 requested that she provide documents related to interrogatory 15, her past mental health care providers; RFP 4 that she provide documents related to interrogatory 17, name of the biological father of K.L.P.L. and explain the custodial arrangement; RFP 6 that she provide copies of documents relating to her answer to interrogatory 20, the itemized accounting of all claimed losses and expenses; and RFP 8 that she provide copies of any and all bills for counseling or treatment due to the alleged trauma she suffered as a result of the subject incident. To each of these, Plaintiff responded that she was "in the process of gathering all invoices which contain the [providers'] names and telephone number[s]". (*Exhibit 6*, Plaintiff Pettine's Responses to Defendant City's First Set of RFP.)

City Defendants took Plaintiff Pettine's deposition on June 21, 2013, only nine working days before the end date for discovery. (See *Exhibit 13*, the cover sheet of the transcript of Ms. Pettine's deposition.) Although medical records, a list of current and previous mental health care providers whom Plaintiff had seen, along with a medical release, had been requested five months previously, none had been provided. Due to discovery drawing to a close, Defendants proceeded with Plaintiff's deposition without the benefit of the medical records; consequently, Defendants were unable to question her about the issues raised in those records.

By letter dated July 18, 2013 addressed to and emailed to Plaintiff's counsel, Defendants attempted to resolve the deficiency in Plaintiff Pettine's discovery responses by setting out the deficiencies and requesting she provide the requested documents, and requesting Plaintiffs agree to extend discovery to allow Defendants to collect relevant medical records once Plaintiff had identified her mental health care providers and executed a medical release. (*Exhibit 1*.)

In response, Plaintiff Pettine promptly sent her Third Supplemental Answers to Defendants First Set of Requests for Production. (See *Exhibit 8.*) However, her answers and responses remained incomplete as she did not provide a list of past health care providers nor records from her past or current medical and health care providers. Further, Plaintiff refused to execute the provided releases, arguing she is not required as there is no specific numbered interrogatory or request for production requesting she execute the releases. Plaintiff followed this with a Fourth Supplemental Response to Defendant's First Request for Production. These too fail to provide complete responses to City Defendants' initial requests for production. (See *Exhibit 9*; no records are provided from *Maureen Polikoff*, MSW).

Although Plaintiff has provided four sets of supplemental answers, she still has not fully answered the above interrogatories or provided complete medical and billing records from all of her providers provided an executed medical release. Even at that, the limited medical records she has provided came only after the close of discovery, and some six to seven months after the discovery requests had been sent to Plaintiff. (See *Exhibit 8*, Plaintiff's Third Supplemental Response RFP No. 8 (Maureen Polikoff is retired and Plaintiff cannot obtain her records; Maria Baca's records have been archived); *Exhibit 9*, Plaintiff's Fourth Supplemental Responses.) As a result, City Defendants have been severely prejudiced in their ability to prepare a defense to Plaintiffs' allegations.

Both past and present medical records are relevant and necessary for City Defendants to formulate a defense to determine whether Plaintiff Pettine suffered from anxiety, depression and other issues, including drug and alcohol abuse and domestic violence, prior to the July 31, 2010 incident. This is particularly true in light of documents evidencing that Ms. Pettine may been the victim of domestic violence prior to July 31, 2010, and may still be subjected to domestic violence in her current marriage. (See *Exhibit 10 A-C* (911 Domestic Violence Calls, and *Exhibit 11*, Maueen Polikoff and Veterans Administration medical records, (8/30/10 – depressed, can't work, on medical disability due to depression because 2 y/o daughter kidnapped by her father; binge drinking in college, anxiety; 10/6/11 - prior relationship miserable,, verbal abuse, incident of choking; 2/6/12 concussion, hit accidently with a golf club; 4/16/12, ex-husband filed restraining order and she lost all custody rights for 3 months; 6/18/12 dank pine sol instead of red bull). Therefore, all her current and past medical and mental health treatment, evaluations, diagnosis and visits to any medical and mental health care provider or counselor are relevant and should be discoverable. Also relevant are Pettine's employment records from prior jobs. To obtain these records, Defendant requires medical and employment releases executed by Pettine reaching back at least fifteen years, to her early adulthood.

At this time, the only medical records and bills Defendants have are those Plaintiff has chosen to provide, all of which were provided after the close of discovery and after City Defendants had taken Plaintiff Pettine's deposition.

Because Plaintiff Pettine refused to timely identify her current health care providers or provide her medical records from these providers, refuses to identify mental health care providers she may have seen prior to the subject incident and refused to execute a provided medical release to allow Defendants to request Plaintiff Pettine's relevant medical records,

pursuant to Rule 37(c)(1) Defendants request that Plaintiff be sanctioned by being prohibited from using the belated provided records as exhibits at trial and not be allowed to have treating and/or evaluating healthcare providers Mary Baca, Samuel Roll, Ph.D., Dr. Porterfield, Jane Levy, Maureen Pelikoff or Bob Galligan testify at trial as Defendants have been given no fair opportunity to do discovery involving these providers or records. Fed. R. Civ. Proc. 37(c)(1) provides that "[if] a party fails to provide information or identify a witness as required by Rule 26 (a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless."

### 2. **Defendant's Second Set of Discovery Requests to Plaintiffs, Interrogatory Nos. 1, 3, 4 and 9, and RFP Nos. 1, 3, 4 and 5**

On May 31, 2013, City Defendants served Plaintiffs with its Second Set of Interrogatories and Requests for Production. Plaintiffs' answers and responses were mailed several days after they were due; answers to interrogatory nos. 1, 3, 4 and 9, and responses to requests for production nos. 1, 3, 4 and were incomplete or inadequate, as set out below. (*Exhibit 12*, Plaintiffs' Answers and Responses to City Defendants' Second Set of Interrogatories and RFP).

In Interrogatory Nos. 3 and 4 of its Second Set of Interrogatories to Plaintiffs, Defendant asked if Plaintiffs' expert had reviewed the Public Service Aide's dash cam video or belt recorder before preparing his expert report. Plaintiffs responded that he had not viewed the video or belt recorder until after the "Expert Witness had written his preliminary report." In its July 22, 2013 letter to Plaintiffs' counsel regarding City Defendants' concerns with Plaintiffs' answers and responses, Defendants requested that if Plaintiffs' expert has prepared a supplemental report based on viewing these items, to provide a copy of the supplemented report,

and if none exists, to have him supplement his report based on his review of the additional evidence so that Defendant can be learn of any changes in his opinions based on this evidence.

Plaintiffs deny that after viewing the video and belt recorder that their expert prepared a supplemental or final report. However in compliance with Rule 26(e)(1), City Defendants request that the Court require Plaintiffs' expert to supplement his report now that he has viewed the dash cam video and belt recorder. See *Fed. R. Civ. P. 26(e)(2)*, any additions or changes to the information in the expert's report must be disclosed; Rule 26(e)(1) and (A), disclosures are to be supplemented or corrected "in a timely manner"; see also *Talbert v. City of Chicago*, 236 F.R.D. 415, 2006 U.S. Dist. LEXIS 47307, holding that (Rule 26(e)(1) imposes a "duty" on a party to supplement an expert's report "if a party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the parties during the discovery process or in writing".

Interrogatory 9 requests that "Plaintiffs provide the factual basis for your expert witness' conclusion that the incident on which your complaint is based was wrongly handled … [and to] state with specificity how your expert witness would have handled the situation differently". Plaintiffs only answer was to refer Defendants to the expert's report.

By letter dated July 22, 2013 (*Exhibit 2*) written to Plaintiffs' counsel Nathaniel Thompkins, City Defendants made a good faith attempt to resolve the discovery issues it had regarding Plaintiffs' answers and responses to City Defendants' Second Set of Discovery to Plaintiffs. Defendants again requested that Plaintiffs' expert supplement his report, as his opinions on the July 31, 2010 situation are mere unsupported assertions lacking foundation, and to explain how he would have handled the situation differently from the Espanola police officers.

Plaintiffs refused, stating that "Plaintiffs have filed the appropriate answers and objections to this interrogatory." (See *Exhibits 3 and 12*.)

Fed. R. Civ P. 26(a)(2) advisory committee's note to the 1993 Amendments provides that an expert must prepare a "detailed and complete written report stating the testimony the witness is expected to present during direct examination, together with the reasons therefore". Further, the court in *Hicks v. Dairyland Insurance Co.*, 2009 U.S. Dist. LEXIS 76832 held that expert's reports should be sufficiently detailed and complete, so that counsel can conserve resources by avoiding the necessity of deposing experts in every case without running the risk of being ambushed at trial. In compliance with Rule 26 and case law, Defendant requests the Court sanction Plaintiffs for their failure to participate in good faith in discovery with City Defendants by striking Plaintiffs' identified expert Edward Mament from testifying at trial in this matter, and that his expert report be stricken and not used for any purpose. Fed. R. Civ. Proc. 37(c)(1) provides that "[if] a party fails to provide information or identify a witness as required by Rule 26 (a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless."

**WHEREFORE,** Defendant City of Espanola respectfully requests that this Court grant Defendants' motion to strike Plaintiff Pettine's medical records and Plaintiffs' expert report, and to strike Plaintiffs' expert witness, Edward Mamet, from testifying at trial in this matter, as well as the named health care providers to Plaintiff Pettine and order all other relief this Court deems just and proper.

Basham & Basham, P.C.

**Electronically Filed**

*/s/ Mark Basham*
Mark Basham
Basham & Basham, P.C.
2205 Miguel Chavez, Suite A
Santa Fe, New Mexico 87505
(505) 988-4575
*Attorneys for Espanola Defendants*

## CERTIFICATE OF SERVICE

**I HEREBY** certify that on the 16th day of August 2013, I filed the foregoing Espanola Defendants' Motion to Compel which caused counsel of record to be served by electronica means or by U.S. Mail, as more fully reflected on the Notice of Electronic Filing:

Nathaniel Thompkins, Esq.
New Mexico Firm, L.L.C.
103 N. St. Francis Drive, Unit A
Santa Fe, New Mexico 87505
Attorney for Plaintiffs


*/s/ Mark A. Basham*
Mark A. Basham