IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ANTONIO GALLEGOS, KRISTIAN
PETTINE and ANDRE GALLEGOS,

      Plaintiffs,                  Case No. 12-CV-00224 LH/KBM

v.

CITY OF ESPANOLA, a municipal
corporation, JOE MARTINEZ, individually
and in his official capacity; JEREMY
APODACA, individually and in his official
capacity; ROBERT VIGIL, individually and
in his official capacity; CITY OF ESPANOLA
OFFICERS and SUPERVISORS JOHN
DOES 1 THROUGH 10, individually and in
their official capacities,

      Defendants.

## MOTION TO BIFURCATE
## AND SUPPORTING MEMORANDUM

**COME NOW** Defendants City of Espanola, Joe Martinez, Jeremy Apodaca, Robert Vigil, City of Espanola Officers and Supervisors John Does 1 through 10 (hereinafter, "City Defendants"), by and through their counsel of record, Basham & Basham P.C. (Mark A. Basham), and respectfully move this Court to bifurcate and stay the proceedings on Plaintiffs' claims against the City of Espanola, former Police Chief Joe Martinez and City of Espanola Officers and Supervisors John Does 1 through 10, individually and in their official capacities. As grounds therefor, Defendants state as follows:

# I. BACKGROUND

1. Plaintiffs allege that on July 31, 2010 Defendants Jeremy Apodaca and Robert Vigil, acting under color of state law or local ordinance, unlawfully seized and arrested them, which acts violated Plaintiffs' federal constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution. (*Doc. 1, ¶¶ 2, 6*)

2. Plaintiffs allege that Plaintiff Antonio Gallegos was beaten, shot with a Taser several times, handcuffed and arrested without probable cause by Defendant Officers Jeremy Apodaca and Robert Vigil. (*Doc. 1, ¶¶ 3, 59*)

3. Plaintiffs allege that Plaintiff Kristian Pettine was handcuffed and arrested without probable cause by Defendant Officer Jeremy Apodaca and taken to the Espanola Detention Center. (*Doc. 1, ¶ 4*)

4. Plaintiffs allege that Plaintiff Andre Gallegos, a minor, was handcuffed and arrested without probable cause by Defendant Officer Jeremy Apodaca and taken to the Espanola Detention Center. (*Doc. 1, ¶ 5)*

5. At the time of the alleged incidents, Defendants Jeremy Apodaca and Robert Vigil were employed as police officers with the City of Espanola. (*Robert Vigil's Ans. #2 to Plaintiffs' First Set of Interrogatories; Jeremy Apodaca's Ans. #2 to Plaintiffs' First Set of Interrogatories.)*

6. Plaintiffs also name Joe Martinez and the City of Espanola as defendants. (*Doc. 1, Caption)*

7. At the time of the alleged incidents, Defendant Joe Martinez was employed as the chief of police for the City of Espanola. (*Exhibit A, Deposition of Joe Martinez 46:9-47:4.)*

8. Although not at the scene of the incident, Plaintiffs allege that former Chief Joe Martinez also committed the alleged federal constitutional violations and torts and that, as the

chief of police, he was responsible for the training, supervision, discipline and retention of Espanola police officers. *(Doc. 1, ¶ 7)*

9.  As the public employer of Defendant Officers Apodaca and Vigil and former Chief Martinez, Plaintiffs allege that the City of Espanola was responsible for the hiring, training, supervision, discipline and retention of the employees. *(Doc. 1, ¶ 7)*

10. Plaintiffs allege that the City of Espanola developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of people in Espanola, which caused the City's police officers to violate Plaintiffs' rights. *(Doc. 1, ¶¶ 62, 6)*

11. Plaintiffs allege that it was the policy and/or custom of the City of Espanola to negligently hire, inadequately supervise, discipline and train its police officers, and inadequately and improperly investigate citizen's complaints of police misconduct, tolerating acts of misconduct by its officers and failing to require appropriate in-service training or re-training of officers who were known to engage in police misconduct which allowed the Defendant police officers to believe that their actions would not be properly supervised and misconduct investigated, disciplined or sanctioned, all of which demonstrates a deliberate indifference on the part of the City of Espanola to the constitutional rights of Plaintiffs. *(Doc. 1, ¶¶ 7, 62-65.)*

12. Pursuant to Fed. R. Civ. P. 42(b) and the principles set out in *Desmare v. State of New Mexico, et al., 2007 U.S. Dist. LEXIS 97077 (D.N.M. 2007)*, Defendants request that this Court sever issues for trial in this matter to avoid prejudice to Defendant Officers Jeremy Apodaca and Robert Vigil, to expedite the trial of this matter and avoid possibly unnecessary litigation for the City of Espanola and former Police Chief Joe Martinez, and for judicial economy.

13. Concurrence of opposing counsel was sought but was refused.

## II. STANDARD OF REVIEW

*Rule 42(b)* of the *Federal Rules of Civil Procedure* grants trial courts broad discretion in deciding whether to sever issues for trial in the furtherance of convenience, to avoid prejudice, or when separate trials would be conducive to expedition of the litigation and judicial economy. *Fed. R. Civ. P. 42(b); Desmare v. State of New Mexico, et al., 2007 U.S. Dist. LEXIS 97077 (D.N.M. 2007); Saviour v. City of Kansas City, et al., 1992 U.S. Dist. LEXIS 8813.* Bifurcation is appropriate "if such interests favor separation of issues and the issues are clearly separable." *Palace Exploration Co. v. Petroleum Dev. Co., 316 F.3d 1110, 1119 (10th Cir. 2003, quoting Angelo v. Armstrong World Indus., Inc., 11 F.3d 957, 964 (10th Cir. 1993)*; but see *Angelo v. Armstrong World Indus., Inc., 11 F.3d 957, 964 (10th Cir. 1993) ("[r]egardless of efficiency and separability, ... bifurcation is an abuse of discretion if it is unfair or prejudicial to a party").*

## III. ARGUMENTS AND AUTHORITIES

Plaintiffs allege the City of Espanola and its police chief are responsible for the allegedly wrongful acts on the part of Officers Apodaca and Vigil due to the City's policies or customs, negligent practices in hiring, supervising, investigating complaints of misconduct, disciplining and training its police officers. However, "[a] municipality may not be held liable under *[42 U.S.C.] § 1983* solely because its employees inflicted injury on the plaintiff." *Bryson v. City of Okla. City, 627 F.3d 1299, 1307 (10th Cir. 1998) (quotation omitted); Monell v. Department of Social Services, 436 U.S. 658, 691 (1978).* A municipality may be held liable under *§ 1983* only "for *its own* unconstitutional or illegal policies" (emphasis added), *Barney v. Pulsipher, 143 F.3d*

4

*1299, 1307 (10th Cir. 1998)*, and only if Plaintiffs can establish a direct causal link between the allegedly unconstitutional acts complained of and a policy or custom established by the City. *D.T. by M.T. v. Independent School Dist. No. 16 of Pawnee County, Okl., 894 F.2d 1176 (10th Cir. 1990); City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 (1985)*. The basis for these requirements is to prevent municipal liability under *§ 1983* from collapsing into mere *respondeat superior* liability. See *Bd. of Cnty. Comm'rs v. Brown, 520 U.SW. 397, 415 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997); Smith Jr. v. Silvas, et al., 414 F. Supp. 2d 1015; 2006 U.S. Dist. LEXIS 5582, citing City of Canton v. Harris, 489 U.S. 378, 388, 390, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)*.

Not only must Plaintiffs show that their injuries are the result of a custom or policy of the City of Espanola, but that "the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Schneider v. City of Grand Junction Police Dep't., 717 F.3d 760, 2013 WL 2421071 at*7 (10th Cir. 2013)*. This will require that Plaintiffs present evidence outside of their own case to support their allegation that Espanola's policy was unconstitutional by presenting instances of prior allegations of excessive force and false arrest. *Watson v. City of Kansas City, Kansas, 857 F.2d 690, 695 (10th Cir. 1988)*.

Likewise, the bar for supervisory liability is quite high. As stated by the court in *Holland v. Harrington, 268 F.3d 1179, 1187 (10th Cir. 2001)*, to succeed in a supervisory liability claim against a police chief, plaintiff must demonstrate deliberate indifference, as well as "an affirmative link" between the supervisor's conduct and the constitutional deprivation. See *Smith Jr. v. Silvas, et al., 414 F. Supp. 2d 1015; 2006 U.S. Dist. LEXIS 5582, citing City of Canton v. Harris, 489 U.S. 378, 388, 390, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)*.

### A. Prejudice to Defendant Officers Jeremy Apodaca and Robert Vigil

Thus, to support Plaintiffs' allegations that the City had a constitutionally inadequate policy regarding hiring, supervision, training, investigation and disciplining of its officers, Plaintiffs must present evidence of liability of prior instances of allegations of excessive force and illegal arrests against Espanola police officers. *Saviour v. City of Kansas City, 1992 U.S. Dist. LEXIS 8813; Schneider, 717 F.3d 760, 2013 WL 2421071 at \*7 (the official policy prong is to distinguish acts of the municipality from acts of its employees).*

However, presentation of past wrongs by other City of Espanola officers will be highly prejudicial to Defendants Apodaca and Vigil. First, a jury may inappropriately assume that Officers Apodaca and Vigil used excessive force and falsely arrested Plaintiffs because the City, on behalf of its officers, has previously settled or been found liable for excessive use of force and false arrest, and settled or been found liable for insufficient training and supervision of its officers. Second, presenting histories of prior instances of excessive force and/or wrongful arrest can cause the jury to confuse or merge the facts of prior alleged instances of wrongdoing by other officers with Plaintiffs' allegations against Officers Apodaca and Vigil.

### B. Bifurcation may Expedite the Litigation and Conserve Judicial Resources

In order for Plaintiffs to succeed on their claims against the City of Espanola and former Police Chief Joe Martinez, there must be a finding of liability on the part of Officers Apodaca and Vigil. If the jury finds that these officers committed no wrong against Plaintiffs, then Plaintiffs' claims against the City of Espanola and former Chief of Police Joe Martinez must necessarily fail. *Carr v. Castle, 337 F.3d 1221, 2003 U.S. App. LEXIS 15568 (10th Cir. 2012) (in order to prevail on claim against a municipality for failure to train its police officers in the use*

6

*of force, a plaintiff must first prove, among other factors, that the officers exceeded constitutional limitations on the use of force); United States of America v. Hamilton, 2013 U.S. Dist. LEXIS 32718 (D. Wyo., Mar. 5, 3013) (if the jury finds for the individual defendants on liability, that will be the end of the matter, saving both the parties and the court the time and energy of arguing and resolving the claims of failure to train and supervise against the government employer).*

It would be against all logic for a jury to find the City and its chief of police negligent in their hiring, supervision, training, investigation of complaints and discipline of Espanola officers and be the cause of Plaintiffs' damages when the jury found Defendant Officers Apodaca and Vigil blameless. Bifurcation will correct for these possibilities. It will also serve judicial economy and prevent subjecting the City and former Police Chief Martinez to an expensive, time-consuming and unnecessary trial in the event Officers Apodaca and Vigil are found to have committed no wrong in the matter involving Plaintiffs.

Guidance on when bifurcation is appropriate is gained from the holding in *Desmare,* where the primary issue presented to the court was whether Plaintiffs' claims against the State should be bifurcated from the claims against the State employee, McCutcheon, who was alleged to have sexually harassed plaintiff. The court noted that evidence of past acts of sexual harassment would need to be presented to show a policy and/or custom of unconstitutional behavior of the State in order to find liability against the State. Finding that defendant McCutcheon would be highly prejudiced by such past acts being presented to the jury and that it was possible that bifurcating the trial would promote judicial efficiency, the court granted defendant's motion to bifurcate the trial. *Desmare v. State of New Mexico, et al., 2007 U.S. Dist. LEXIS 97077 (D.N.M. 2007) (while the court is sensitive to burdens that separate trials might*

7

*impose on plaintiffs, the legal issues and evidence relevant to plaintiffs' claims against the State are not so similar to those against defendant McCutcheon that separate trials would require plaintiffs to essentially try the same case twice, and may even obviate or reduce the need to litigate all of the issues at play in the action between plaintiffs and the State); United States of America v. Hamilton, 2013 U.S. Dist. LEXIS 32718 (D. Wyo., Mar. 5, 3013) (if the jury finds for the individual defendants on liability, that will be the end of the matter, saving both the parties and the court the time and energy of arguing and resolving the claims of failure to train and supervise against the government employer).*

Separation of trials will also benefit Plaintiffs. First, it will allow Plaintiffs to concentrate and focus on the narrower case against Officers Apodaca and Vigil. Second, if the jury does find the officers liable, then Plaintiffs' claims against the City and its police chief will have been made much easier to prove, and will shorten the time needed for Plaintiffs to present their case against the City and former Police Chief Martinez. Third, bifurcation will help avoid prejudice against both the City and Plaintiffs. A jury may find in Defendant City's favor on liability based on the potential costly and bankruptcy-inducing penalties if punitive damages are awarded against the City. *Desmare v. State of New Mexico, et al., 2007 U.S. Dist. LEXIS 97077 (D.N.M. 2007).*

**WHEREFORE,** to avoid prejudicing Defendant Officers Apodaca and Vigil by the presentation of past unconstitutional acts of excessive force and false arrest by City of Espanola officers, and because bifurcation will promote economy for the parties and judicial efficiency for the Court, Defendants respectfully request the Court grant their motion and bifurcate the trials of the allegations against Officers Jeremy Apodaca and Robert Vigil from Plaintiffs' claims against the City of Espanola, Chief of Police Joe Martinez, and City of Espanola Officers and

Supervisors John Does 1 through 10, individually and in their official capacities

Respectfully submitted,

**Electronically Filed**
*/s/ Mark A. Basham*
Mark A. Basham
Basham & Basham, P.C.
2205 Miguel Chavez, Suite A
Santa Fe, New Mexico 87505
(505) 988-4575
*Attorneys for Espanola Defendants*

## CERTIFICATE OF SERVICE

**I HEREBY** certify that on the 24th day of September 2013, I filed the foregoing Defendants' Motion to Bifurcate and Supporting Memorandum which caused counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Nathaniel Thompkins, Esq.
New Mexico Firm, L.L.C.
103 N. St. Francis Drive, Unit A
Santa Fe, New Mexico 87505
nate@newmexicofirm.com
*Attorney for Plaintiffs*

*/s/ Mark A. Basham*
Mark A. Basham

```
 1           IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF NEW MEXICO
 2

 3
    ANTONIO GALLEGOS, KRISTIAN PETTINE,
 4  ANDRE GALLEGOS, and K.L.P.L., a
    minor child,
 5
                     Plaintiffs,
 6
    vs.                                  No. 1:12-CV-224-LH/KBM
 7

 8  CITY OF ESPAÑOLA, a municipal corporation,
    JOE MARTINEZ, individually and in his official capacity;
 9  JEREMY APODACA, individually and in his official
    capacity; ROBERT VIGIL, individually and in his official
10  capacity; CITY OF ESPAÑOLA OFFICERS and SUPERVISORS JOHN
    DOES 1 through, individually and in their official
11  capacities,

12
                    Defendants.
13
                   DEPOSITION OF JOE A. MARTINEZ
14                    Wednesday, June 19, 2013
                             9:04 a.m.
15                   Cumbre Court Reporting, Inc.
                         2019 Galisteo Street
16                   Santa Fe, New Mexico 87505

17                       CERTIFIED COPY

18          PURSUANT TO THE NEW MEXICO RULES OF CIVIL
    PROCEDURE, this Deposition was:
19
    TAKEN BY:    NATHANIEL V. THOMPKINS
20               ATTORNEY FOR THE PLAINTIFFS

21
    REPORTED BY: ALLISON ASH-HOYMAN
22               NEW MEXICO CCR #18
                 CUMBRE COURT REPORTING, INC.
23               2019 Galisteo, Suite A-1
                 Santa Fe, New Mexico 87505
24

25
                                             Allison Ash-Hoyman, CCR 18
```

DEFENDANT'S EXHIBIT A

Page 46

1  A. No.
2  Q. What kinds of investigations?
3  A. We usually did follow-ups. If the attorney
4  went through a case and thought something was lacking,
5  they would send us out to do the follow-up.
6  Q. Okay.
7  A. Interviews, whatever.
8  Q. Okay. And after four years what happened?
9  A. I resigned from the First Judicial District to
10 go to work for Española as the chief.
11 Q. Okay. You resigned because of the position
12 with the Española, or you resigned for other reasons?
13 A. Actually I resigned because I was going to
14 retire.
15 Q. Okay.
16 A. I was going to retire completely and tend to
17 my little farm. And then I was offered the position in
18 Española.
19 Q. Okay. What year was it that you came back to
20 Española?
21 A. It was 2010.
22 Q. And what -- I'm sorry?
23 A. I believe it was in March of 2010. March or
24 April, one of those two months in 2010.
25 Q. And what did you come back to Española Police

Page 47

1  Department as?
2  A. The chief's position.
3  Q. The chief?
4  A. Yes.
5  Q. And who -- were you appointed?
6  A. Yes.
7  Q. And who appointed you?
8  A. Mayor Alice Lucero. The city manager was
9  James Lujan.
10 Q. I'm sorry, the city manager was who?
11 A. James Lujan.
12 Q. Is that the same city manager that left the
13 County of Santa Fe and came up to Española --
14 A. Yes.
15 Q. -- and was involved in that case?
16 A. Yes.
17 Q. And how long were you the chief?
18 A. Ten months.
19 Q. Ten months?
20 A. Yes.
21 Q. Okay. When you became the chief, and you took
22 the position, what did you do in terms of learning about
23 the department and the people that would be working for
24 you?
25 A. Of course I had a meeting with all the

Page 48

1  officers. I had a lieutenant and two sergeants that I
2  met with.
3  Q. When you say "meeting with all the officers,"
4  did you meet individually or you had a group meeting?
5  A. I believe we had a group meeting, and I
6  believe we met individually also.
7  Q. I'm sorry, I didn't catch the first -- the
8  second part.
9  A. There was a group meeting, and then there was
10 meetings with individual officers on occasion, yes.
11 Q. On occasion?
12 A. Yes.
13 Q. So you didn't meet with all the officers?
14 A. I don't recall if I met with all of them.
15 Q. All right. Who was the lieutenant? You said
16 you had a lieutenant and two sergeants.
17 A. Lieutenant Christian Lopez.
18 Q. And who were the two sergeants?
19 A. Sergeant Richard Gallegos.
20 Q. And?
21 A. And Sergeant Rick Martinez.
22 And I promoted one sergeant, Sergeant Jeff
23 Martinez, while I was there.
24 MR. BASHAM: Promoted to sergeant.
25 THE WITNESS: I'm sorry?

Page 49

1  MR. BASHAM: Promoted him to sergeant?
2  THE WITNESS: To the sergeant position.
3  BY MR. THOMPKINS:
4  Q. So after you came on board you then had three
5  sergeants?
6  A. Yes.
7  Q. Okay. What areas did you discuss -- excuse me
8  -- what areas did you discuss with the personnel when
9  you first met with them?
10 A. I don't recall.
11 Q. Okay. How about at the individual meetings,
12 do you recall what areas you discussed?
13 A. No, I don't.
14 Q. Did you undertake to review the personnel
15 files of the -- strike that.
16 Before we get to that, you have indicated you
17 had one lieutenant, two sergeants and then you promoted
18 one of the officers to sergeant. Besides those
19 personnel, how many other officers were in the
20 department? Do you recall?
21 A. I don't recall exactly. More than 15, less
22 than 20.
23 Q. Okay. Did you take the opportunity to review
24 the personnel files of the officers that worked in the
25 department when you became chief?