IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANTONIO GALLEGOS, KRISTIAN PETTINE,
and ANDRE GALLEGOS,

      Plaintiffs,

  -vs-                                                  No. Civ. 12-0224 LH/KBM

CITY OF ESPANOLA, a municipal corporation;
JOE MARTINEZ, individually and in his official
capacity; JEREMY APODACA, individually and in
his official capacity; ROBERT VIGIL, individually
and in his official capacity; CITY OF ESPANOLA
OFFICERS and SUPERVISORS JOHN DOES 1
through 10, individually and in his official
capacities,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Motion in Limine to Exclude the Opinion Testimony of Plaintiffs' Expert Edward Mamet (Motion #1) (ECF No. 124) and Defendants' Second Motion in Limine to Exclude the Opinion Testimony of Plaintiffs' Expert Edward Mamet (Motion #2) (ECF No. 125), both filed on May 2, 2014. The Court, having reviewed the Motions, the parties' memoranda, and the applicable law, and otherwise being fully advised, finds the Motions are well taken in part and will be **granted in part**.

**BACKGROUND**

Edward Mamet ("Mr. Mamet"), Plaintiff's expert in the field of police practices and standards, was an active duty officer with the New York City Police Department ("NYPD") for

more than thirty-nine years, attaining the rank of Captain. Report of Expert Opinion[,] Experience[,] and Qualifications ("Report") at 1 (ECF No. 124-1); Resume of Edward Mamet, CPP, CFE ("Resume") at 1 (ECF No. 128-2, Ex. B). Since his retirement from NYPD in 1998, he has been a Police Practices & Management Consultant with, and President of, ECJM Consultants Inc., which specializes in law enforcement and security liability matters. Resume at 2. As a private consultant and expert witness in police and law enforcement practices, he has provided expertise in the areas of investigation of critical incidents; internal affairs function; police discipline; use of force and deadly force issues; high-speed pursuits; investigative procedures and supervision; personnel practices, management, supervision, and administration; liability management; and policy and procedure development. Report at 1.

Mr. Mamet based the opinions and conclusions expressed in his Report on his forty-eight years of experience in law enforcement, knowledge, training, and education (as listed in his Resume), and certain materials provided to him by Plaintiffs. *Id.* at 3. These documents were the Complaint, First Amended Complaint, Second Amended Complaint, Audio Log of Child Custody Hearing, Antonio Gallegos's Docket Sheet from Espanola Magistrate Court, Alleged DUI Arrest from Espanola Animal Control, Incident Narrative 10-07-476, page 1 of Uniform Incident Report, Officers Robert Vigil's and Jeremy Apodaca's Answers to Interrogatories & Request for Production, Officer Vigil's Employee Profile, and Cuba Police Department Documents. *Id.* at 5.

Mr. Mamet states two opinions in the Report: "1. Negligent Hiring, Supervision & Retention . . . In my opinion EPD [Espanola Police Department] and the City of Espanola negligently hired Officer Vigil, failed to properly supervise Officer Vigil and Apodaca [sic] and

2

failed to properly train both officers, " *id.* at 5-7, and "2. No Probable Cause to Arrest Plaintiffs," *id.* at 7-8. In addition to his opinion that all three Plaintiffs were arrested without probable cause, Mr. Mamet also opined that "for whatever the reasons, deliberate indifference or otherwise, [EPD policies] were not followed . . . Defendants acted improperly and beyond the scope of acceptable police practices." *Id.* at 7-8. He further identified "several major, problematic issues":

> (1) the lack of effectiveness of the EPD internal affairs practices in achieving the goals of an internal affairs unit; (NEGLIGENT SUPERVISION)
>
> (2) lack of effective use of Taser and documenting of the use of a Taser as required under EPD policies; (NEGLIGENT TRAINING)
>
> (3) the probable or foreseeable effect of permitting police officers arresting citizens [sic] without probable cause that a crime had been committed; and (NEGLIGENT TRAINING)
>
> (4) that the above collective factors lead to a conclusion that it is more likely than not that the EPD has created a law enforcement culture that led to the use of excessive force on Mr. Gallegos. (NEGLIGENT TRAINING, SUPERVISION AND RETENTION OF VIOLENCE PRONE POLICE OFFICER).

*Id.* at 8.

In the Report section titled "Basis for Opinions" and subtitled "Internal Affairs," Mr. Mamet noted that an internal affairs unit within law enforcement agencies provides a means of internal control, and discussed various purposes served by such a unit and the criteria necessary for its effectiveness. *Id.* at 8-9. He concluded this section by stating that while Plaintiffs filed a Torts Claim Notice, he had "not seen a reason why EPD has not conduct [sic] IAU investigations into any of the cases, including the instant case, when citizen complaints have been made." *Id.* at 9-10.

Finally, in his "Conclusions," Mr. Mamet opined that "Officers Vigil [sic] was negligently hired, trained, supervised and retained by City of Espanola[; and] Officer Apodaca was negligently supervised, trained and retained by City of Espanola." *Id.* at 10. He further stated

> that from a hiring, training, supervision, retention and employee monitoring standpoint this incident was wrongly handled. The Plaintiffs' arrests and injuries were due to the defendant officers' lack of training, ignored internal affairs policy and lack of enforcement of the Taser policy. In practice, none of these critical management responsibilities were in conformance with current standards in effect at the time of the incident. Furthermore, the use of excessive force . . was avoidable.

*Id.*

Defendants have filed two Motions seeking to exclude opinion testimony of Mr. Mamet. In Motion #1, brought pursuant to *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), and Federal Rules of Evidence 401, 403, and 702, they contend that Mr. Mamet's opinions regarding their alleged violations of standard police procedures are irrelevant to Plaintiffs' Fourth Amendment claims. More specifically, they maintain that evidence of departures from established standard operating procedures is irrelevant in Fourth Amendment inquiries and would mislead and confuse a jury. Defendants similarly assert that Mr. Mamet's expert opinions regarding "less intrusive" or "less forceful" alternatives are wholly irrelevant to use of force cases. They additionally argue that Mr. Mamet makes factual determinations of what really happened in this case, thereby stating opinions on witness credibility and impermissibly vouching for the Plaintiffs' credibility. Defendants also object to Mr. Mamet's expert opinions on Defendants' alleged liability under Plaintiffs' various legal theories, insisting

these opinions constitute inadmissible legal conclusions without any factual support, and thereby amount to mere speculation.

Defendants bring Motion #2 pursuant to Rule 702, claiming that because Plaintiffs materially changed their factual narratives of the case in their subsequent deposition testimony, Mr. Mamet's opinions now are based on facts no longer endorsed by Plaintiffs themselves. Defendants insist that because Plaintiffs' current factual renditions are at odds with those underlying of his Report, Mr. Mamet must be found to be unfamiliar with the facts of the case, meaning that his opinions would be unhelpful to the trier of fact and, therefore, they must be excluded.

**STANDARD**

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony and provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> **(b)** the testimony is based on sufficient facts or data;
> **(c)** the testimony is the product of reliable principles and methods; and
> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. This rule incorporates the principles of *Daubert* and *Kumho Tire Co., v. Carmichael*, 526 U.S. 137 (1999), to ensure that proffered expert testimony, even non-scientific and experience-based expert testimony, is both relevant and reliable. *See id.* advisory committee's note 2000 Amendments.

*Daubert* challenges, like other preliminary questions of admissibility, are governed by

Federal Rule of Evidence 104. *United States v. Turner*, 285 F.3d 909, 912-13 (10th Cir. 2002). To determine whether an expert opinion is admissible, the district court performs a two-step analysis: (1) whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion, and (2) if the expert is so qualified, whether the expert's opinion is reliable and helpful under the principles set forth in *Daubert*. *See 103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). Pursuant to *Daubert*, courts measure the reliability of scientific evidence by considering a number of nonexhaustive factors, including (1) whether the expert's technique or theory can be and has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the general acceptance of the methodology in the relevant scientific community. *See Kumho Tire*, 526 U.S. at 149-50; *103 Investors*, 470 F.3d at 990 (citing *Daubert*, 509 U.S. at 593-94). The *Daubert* Court emphasized that the focus must be solely on the principles and methodology, not on the conclusions they generate. *Daubert*, 509 U.S. at 595. *Daubert's* general holding setting forth the judge's gate-keeping obligation applies not only to testimony based on scientific knowledge, but also to testimony based on technical or other specialized knowledge. *Kumho Tire*, 526 U.S. at 141.

Trial courts have broad discretion in determining the admissibility of expert testimony. *See United States v. Velarde*, 214 F.3d 1204, 1208 (10th Cir. 2000) (court's admission of expert testimony is reviewed for abuse of discretion). The court's discretion is equally broad in both deciding how to assess an expert's reliability, including what procedures to use in making that assessment, and in making the ultimate determination of reliability. *Id.* at 1208-09. A district

court need not hold a *Daubert* hearing to perform its gatekeeping function, so long as the court has sufficient evidence to perform the task of ensuring that an expert's testimony is both relevant and reliable. *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000). The district court, however, has no discretion as to the actual performance of its gate-keeping function. *Turner*, 285 F.3d at 913.

In addition to satisfying Rule 702 and *Daubert*, proffered expert testimony also must meet the requirements of Federal Rule of Evidence 403. This Rule provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by the danger of one or more of the following: unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

**ANALYSIS**

Having reviewed Mr. Mamet's expert report and the memoranda and materials provided by the parties, the Court concludes that it is not necessary to conduct a hearing on Defendants' Motions in Limine in order to perform its gate-keeping function under *Daubert*. While Defendants do not challenge Mr. Mamet's qualifications, they do contend that his opinions are not relevant or reliable. The Court agrees in part.

Regarding Mr. Mamet's opinions on whether the individual officers violated Plaintiffs' constitutional rights, the Court finds that this testimony would not assist the jury in understanding the evidence or determining a fact in issue. In the first place, it is uncontested that Mr. Mamet based his Report on a version of the facts in this matter that now is claimed, in the main, only by the Defendants. Although this version was provided to him by Plaintiffs, they subsequently testified to a substantially different set of facts at their depositions and argued these

7

new facts in their Motion for Partial Summary Judgment, which the Court denied. *See* Mem. Op. and Order (ECF No. 133) filed June 24, 2014. Given this unusual development regarding the facts upon which he relied, the Court is concerned that any testimony by Mr. Mamet about the basis and reliability of his opinions is likely to result in confusion of the issues and would not be helpful to the jury.

In any case, claims based on violations of police procedures are not actionable under § 1983. *Medina v. Cram*, 252 F.3d 1124, 1133 (10th Cir. 2001) (citing *Romero v. Bd. of Cnty Comm'rs*, 60 F.3d 702, 705 (10th Cir. 1995); *Wilson v. Meeks*, 52 F.3d 1547, 1554 (10th Cir. 1995)). Thus, Mr. Mamet's opinions regarding liability based on failure to follow police policies, procedures, and training must be excluded. The same is true to the extent Mr. Mamet opines that the officers should have used less intrusive or less forceful alternatives against Plaintiffs. Fourth Amendment claims are analyzed under an "objective reasonableness" standard, s*ee, e.g., Graham v. Connor*, 490 U.S. 386, 397 (1989), and this standard "does not require that police offices use 'alternative 'less intrusive' means,'" *Medina*, 252 F.3d at 1133 (quoting *Illinois v. Lafayette*, 462 U.S. 640, 647-48 (1983)). Thus, the Court finds that any testimony by Mr. Mamet as to these issues must be excluded as it would confuse the issues, mislead the jury, and cause unfair prejudice, outweighing any relevance it might have.

Furthermore, any conclusions concerning the individual officers' conduct would not assist the jury, but rather would instead usurp its fact-finding role. *See Wilson v. Muckala*, 303 F.3d 1207, 1219 (10th Cir. 2002). "'When the normal experiences and qualifications of laymen jurors are sufficient for them to draw a proper conclusion from given facts and circumstances, an

expert witness is not necessary and is improper.'" *Id.* (quoting *Frase v. Henry*, 444 F.2d 1228, 1231 (10th Cir.1971)).

In conclusion, Mr. Mamet may not testify concerning whether any of the Defendant Officers' actions violated policies, procedures, training, or Plaintiffs' constitutional rights. The Court reserves ruling, however, on whether Plaintiffs may present Mr. Mamet's expert testimony regarding any municipal liability claims.

WHEREFORE,

**IT IS HERBY ORDERED** that Defendants' Motion in Limine to Exclude the Opinion Testimony of Plaintiffs' Expert Edward Mamet (ECF No. 124) and Defendants' Second Motion in Limine to Exclude the Opinion Testimony of Plaintiffs' Expert Edward Mamet (ECF No. 125), both filed on May 2, 2014, are **GRANTED IN PART.**

_____
**SENIOR UNITED STATES DISTRICT JUDGE**