**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**ANTONIO GALLEGOS, KRISTIAN PETTINE, and ANDRE GALLEGOS,**

**Plaintiffs,**

**v.** **Case No. 12-CV-00224 LH/KBM**

**CITY OF ESPANOLA, a municipal corporation,**
**JOE MARTINEZ, individually and in his official capacity;**
**JEREMY APODACA, individually and in his official capacity;**
**ROBERT VIGIL, individually and in his official capacity;**
**CITY OF ESPANOLA OFFICERS and SUPERVISORS JOHN DOES 1 THROUGH 10, individually and in their official capacities,**

**Defendants.**

**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST PLAINTIFF KRISTIAN PETTINE ON QUALIFIED IMMUNITY GROUNDS**

**COME NOW** the Defendants City of Espanola, Joe Martinez, Jeremy Apodaca, Robert Vigil, City of Espanola Officers and Supervisors John Does 1 through 10, by and through their attorneys of record Basham & Basham, P.C., and hereby respectfully submit Defendants' Motion for Partial Summary Judgment Against Plaintiff Kristian Pettine on Qualified Immunity Grounds. Opposing counsel was contacted for his concurrence to this motion, and he does/does not concur with this motion.

## INTRODUCTION

Plaintiffs' Complaint seeks monetary damages for federal civil rights violations and state law tort claims. Plaintiff Kristian Pettine alleges a § 1983 claim for purported Fourth Amendment violations in connection with her arrest on July 31, 2010. However, the *Terry* stop was supported by reasonable suspicion, and Pettine's subsequent arrest was supported by probable cause. In addition, the individual Defendants did not violate Pettine's clearly

established constitutional rights when she refused to answer questions concerning the identity of her child's father. Qualified immunity applies to the individual Defendants' discretionary acts. Since no genuine issues of material fact exist, partial summary judgment must be granted in Defendants' favor, dismissing with prejudice Plaintiff Kristian Pettine's Unlawful Arrest and Seizure claims.

**ADMITTED FACTS FROM PLAINTIFFS ANTONIO GALLEGOS, KRISTIAN PETTINE AND ANDRE GALLEGOS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT**

Material Fact No. 1. On July 31, 2010, Defendant Jeremy Apodaca ("Apodaca") was dispatched to Plaintiffs' home located at 1201 A North Paseo De Onate in reference to a 911 call regarding aggravated assault. [DOC 68, p. 6] [DOC 94, p. 9]

Material Fact No. 3. Defendant Apodaca was also advised by dispatch that the suspect had left the scene with a "black in color handgun" or "pistol". *Id.*

Material Fact No. 4. Defendant Apodaca and Defendant Robert Vigil ("Vigil") conducted an investigation of the 911 call and questioned Antonio Gallegos, Kristian Pettine and the victim, Alfonso Gurule, for close to one hour. *Id.*

Material Fact No. 8. Defendant Apodaca had a concern that Estevan had left the scene and was walking around with a hand gun. [DOC 68, p. 7] [DOC 94, p. 9]

Material Fact No. 12. Defendant Apodaca after speaking with the victim, Alfonso Gurule, stopped investigating the aggravated assault 911 call and began focusing on Mr. Gallegos and Mrs. Pettine. *Id.*

Material Fact No. 13. During the course of Defendant Apodaca's investigation, he ordered Mr. Gallegos to "stand there by my police car." *Id.*

Material Fact No. 15. Defendant Apodaca, during his investigation, observed Ms. Pettine walking around holding the minor child and placing her (the minor child) down. [DOC 68, p. 8] [DOC 94, p. 9]

Material Fact No. 18. Defendant Vigil physically placed himself in front of Mr. Gallegos and prevented him from entering his home. … Defendant Vigil testified that, "I got in front of Mr. Gallegos and I stopped him. I told him you can't go back in." *Id.*

Material Fact No. 27. Defendant Apodaca arrested Mr. Gallegos and charged him with (1) Battery upon a Peace Officer and (2) Resisting, Evading or Obstructing an Officer. [DOC 68, p. 9] [DOC 94, p. 9]

Material Fact No. 28. Defendant Apodaca made the decision to arrest Mrs. Pettine for Resisting, Evading or Obstructing an Officer. *Id.*

Material Fact No. 29. Defendant Apodaca testified at the Custody Hearing that Mrs. Pettine was arrested because, "[s]he was arrested due to the fact, for one, that she was intoxicated, and also for the intoxication part, we didn't want to leave her at the scene or on her own just in case she got hurt, we didn't want her to get hurt …". … Defendant Apodaca never criminally charged Mrs. Pettine for being intoxicated. [DOC 68, p. 10] [DOC 94, p. 9]

**DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

1. Dispatch advised a City of Espanola Police Officer that the victim who had called 911 had run across the street to a gas station and was hiding from the suspect, "Estevan". Deposition of Officer Jeremy Apodaca, p. 48: lines 8-20, attached hereto as Defendants' Exhibit 1.

2. Estevan is also Antonio Gallegos's son. Deposition of Antonio Gallegos, p. 10: lines 13-25, attached hereto as Defendants' Exhibit 2.

3. Dispatch reported to the Officer that the suspect was believed to be walking toward Northern New Mexico Community College. Incident Report, p. 1, attached hereto as Defendants' Exhibit 3.

4. On his way to the incident site, the Officer travelled by the college and along the route the suspect may have been taking, but did not see him. Exhibit 1, p. 60: lines 4-10.

5. This Officer was the first law enforcement officer to arrive on the scene. Exhibit 1, p. 52: lines 8-9.

6. He parked his police vehicle in front of, but somewhat back from, the mobile home's door. Deposition of Officer Robert Vigil, p. 102: lines 15-18, attached hereto as Defendants' Exhibit 4.

7. Outside the mobile home business, Officer Apodaca saw a male, female and a female toddler. The minor child was sitting on the steps to the mobile home wearing nothing but an obviously soiled heavy diaper. Exhibit 3, p. 1.

8. Officer Apodaca asked the male and female what had happened; both said "nothing" and began to giggle. Exhibit 3, p. 1.

9. Officer Apodaca suspected a Hate Crime may have been committed. Exhibit 1, p. 62: lines 24-24, p. 63: lines 1-3.

10. While talking to Mr. Gurule, Ms. Pettine walked up to Officer Apodaca and said "there was no problem." Officer Apodaca smelled an odor of alcohol on her. She slurred her words, yelled during normal conversation and appeared to have a difficult time standing still and not swaying. Exhibit 3, p. 1.

11. Officer Apodaca remained at the scene for almost an hour while he questioned various people and conducted his initial investigation. Exhibit 1, p. 52: line 3.

12. When he was doing his investigation, Officer Apodaca believed the minor child, while with Pettine, was in danger due to the hot weather, walking around on hot gravel and being exposed to broken glass in the area where she was walking. Exhibit 1, p. 63: lines 19-23, p. 64: lines 1-11.

13. When asked why, in the subsequent custody case, Officer Apodaca testified that the minor child wasn't exposed to any danger during the investigation; however, he explained that the danger was slightly subsided as the officers on scene were intervening at that point. Exhibit 1, p. 66, lines 12-14.

14. Seeing several bottles of beer on the front step and inside the house and broken bottles in the front yard, Apodaca asked Pettine who are the parents of the toddler. She replied the child was her daughter, but refused to provide the name of the father or his contact information, saying only that he was somewhere in Albuquerque and very abusive. (Exhibit 3, p. 1; Exhibit 1, p. 96, lines 7-9.

15. When asked if she had been drinking any alcohol, Pettine admitted to having had "just a couple". Exhibit 3, p. 1.

16. Attempting to find someone suitable to care for the minor child, Officer Apodaca asked Pettine if there was anyone else in the mobile home. At this point two more males walked out of the home, Antonio Gallegos and Andre Gallegos. Antonio Gallegos was highly intoxicated, as were the rest of the adults at the scene. Andre was sober. Exhibit 3, p. 1; Exhibit 1, p. 96: lines 10-15: Exhibit 4, p. 113: lines 15-17, p. 114: lines 7-18.

17. As all adults at the scene were highly drunk, Officer Apodaca had dispatch contact the on-call person for the Children Youth and Families Department ("CYFD") to

determine if he should take the toddler into State custody. Exhibit 3, p. 1; Exhibit 1, p. 54: lines 1-17; p. 93: lines 3-16.

18. The on-call CYFD case worker, Camille, called Officer Apodaca and told him to wait, that CYFD would advise him as to a decision regarding the toddler. Officer Robert Vigil came to the scene to assist Officer Apodaca. Exhibit 3, p. 1; Exhibit 1, p. 52: line 17.

19. Antonio Gallegos now started walking around, yelling that the only guns he had were in his house, that he is a business man in this town and pays taxes. Exhibit 3, p. 1.

20. Officer Apodaca repeatedly told Gallegos to stand by the rear of his police car, but Gallegos made a hand gesture, said he was done here, and turned around and began walking to the mobile home. Exhibit 3, p. 1; Exhibit 1, p. 69, lines 4-6.

21. Not wanting Gallegos to go into the house where he had said he had guns, Officers Vigil and Apodaca yelled loudly several times for Gallegos to stop; when he did not, they ran after him. Exhibit 3, p. 1; Exhibit 1, p. 69: lines 14-15; Exhibit 4, p. 111: lines 2-3.

22. Antonio Gallegos ignored Officers Apodaca and Vigil's commands to stop.

23. Based on Mr. Gallegos' anger, volatility and threats, Officers Apodaca and Vigil were concerned for their safety and "the safety of everybody involved" and had a reasonable basis to not want Gallegos to go into the home at that time. Exhibit 4, p. 105: lines 4-8, p. 107: lines 9-10.

24. Officers Apodaca and Vigil did not want Gallegos to be able to access any guns he said were in his house. Exhibit 1, p. 71: lines 1-8; Exhibit 4: p. 107: lines 1-10, p. 116: lines 5-10.

25. In the entryway of the home, Officer Vigil got between Gallegos and the door. Gallegos aggressively shoved Officer Vigil. Exhibit 3, p. 2; Exhibit 4, p. 115: lines 2-7, p. 117: line 1-3.

26. Officer Vigil used hand control techniques against Gallegos in an attempt to stop him and to handcuff him. Gallegos combatively resisted, resulting in Officer Apodaca applying a dry stun to Gallegos' left shoulder; Gallegos was then put into handcuffs. Exhibit 3, p. 2; Exhibit 4, p. 117: lines 1-9.

27. While Officer Apodaca had no information that the gun used in the aggravated assault on Alfonso Gurule was in Gallegos' house, the gun had not been located. Exhibit 4, p. 105: lines 4-8, p. 107: lines 9-10.

28. When the officers later entered the home, a rifle was found leaning against a wall in the master bedroom. Gallegos also testified there was a gun in the house and that he owns numerous firearms, some of which he has given to his sons. Exhibit 3, p. 1; Exhibit 1, p. 71: lines 1-8, Exhibit 4, p. 111: lines 2-19, p. 116: lines 5-10; Exhibit 2, p. 27: lines 13-25, p. 28: lines 1-9.

29. Ms. Pettine continued to move around the area instigating arguments and refusing to give accurate or proper information, including withholding all information about herself, her toddler and the toddler's father. Exhibit 3, p. 2; Exhibit 1, p. 75: lines 4-11.

30. Officer Apodaca had an ambulance take the toddler to the Espanola Hospital for a medical evaluation. CYFD took custody of the toddler for a forty-eight hour hold, as Pettine, who was in no condition to care for the child, still refused to provide contact information for the toddler's biological father or anyone else who could care for the child. Exhibit 3, p. 2; Exhibit 1, p. 75: lines 4-11, p. 96: lines 19-21.

31. While in custody, Ms. Pettine informed CYFD of the father's identity. Deposition of Kristian Pettine, p. 52: lines 14-25, p. 53: line 1, attached hereto as Defendants' Exhibit 5.

32. Officer Apodaca suspected Child Neglect may have been committed. Exhibit 1, p. 74: lines 10-18.

## ARGUMENT

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Once the party moving for summary judgment has made a prima facie showing of entitlement to such relief, the burden then shifts to the party opposing summary judgment to show that specific evidentiary facts exists which would require a trial on the merits. *See, Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Alder v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998) *citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id. citing Anderson* 477 U.S. at 248.

If the moving party meets this burden, then the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256; *Adler,* 144 F.3d at 671, n.1. "In a response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988). Likewise, the non-moving party may not simply rest upon his or her pleadings to satisfy this burden. *Anderson,* 477 U.S. at 256. The mere existence of some alleged

factual dispute will not defeat an otherwise properly supported motion for summary judgment. *FDIC v. Hulsey*, 22 F.3d 1472, 1481 (10th Cir. 1994).

**B. QUALIFIED IMMUNITY**

A police officer is entitled to raise qualified immunity as a defense if (1) he was performing a discretionary function and (2) he did not violate a clearly established constitutional or statutory right of which a reasonable person in his position would have known. *Anderson v. Creighton*, 483 U.S. 635, 638-39, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). In other words, if a police officer reasonably believed that his actions were lawful in light of clearly established law and based upon all information available to him at the time, then he shall be immune from liability. *Davis v. Scherer,* 468 U.S. 183, 191, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). His reasonable belief, however, will be tested under an objective, rather than a subjective, standard. *Id.*

"The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established. … Instead, for any court to reach a determination that a violation of clearly established law has taken place a "more particularized" inquiry is required. The court must ask whether 'every reasonable official would have understood that *what he [did]* violate[d] that right. … To satisfy this standard, '[w]e do not require a case directly on point,' but neither may a district court deny immunity unless 'existing precedent [has] placed the statutory or constitutional question *beyond debate.*'" *Kerns v. Bader*, 663 F.3d 1173, 1183 (10th Cir. 2011)(internal citations omitted).

However, the initial burden typically accorded to the moving party is shifted when the motion for summary judgment is based on qualified immunity. *See, Koch v. City of Del City,*

660 F.3d 1228, 1238 (10th Cir. 2011). Whenever a moving party asserts qualified immunity at the summary judgment phase, it is the non-moving party that bears the burden of showing that (1) the defendant violated a constitutional right, and (2) the right was clearly established at the time of the alleged unlawful activity. *Id.; Lundstrom v. Romero,* 616 F.3d 1108, 1118 (10th Cir. 2010) *citing Riggins v. Goodman,* 572 F.3d 1101, 1107 (10th Cir. 2009). "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment—showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. *Koch*, 660 F.3d at 1228 (internal quotations and citations omitted).

In *Eddy,* the Third Circuit Court of Appeals noted that failing to raise affirmative defenses in an answer does not result in automatic waiver. … The court in *Eddy* went on to adopt this more lenient standard already employed by the First and Sixth Circuits. … With these considerations in mind, the court in *Eddy* noted that qualified immunity could be raised (1) in a motion to dismiss at the pleading stage, (2) in a motion for summary judgment after discovery, or (3) as an affirmative defense at trial. … Thus, the last possible opportunity to raise qualified immunity is by a motion for judgment as a matter of law." *Adamo v. Dillon,* 900 F.Supp.2d 499, 506 (M.D. Pa. 2012) *citing Eddy v. V.I. Water and Power Auth.,* 256 F.3d 204 (3rd Cir. 2001)(internal citations and quotations omitted).

**C. UNLAWFUL ARREST AND SEIZURE**

"The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Herrera v. City of Albuquerque,* 589 F.3d 1064, 1070 (10th Cir. 2009).

"In applying the Fourth Amendment's protections against unreasonable searches and seizures, the Supreme Court has recognized three types of police-citizen encounters: consensual encounters, investigative detentions, and arrests." *Koch v. City of Del City,* 660 F.3d 1228, 1238 (10th Cir. 2011).

"An investigative detention must be 'justified at its inception' by a reasonable suspicion of criminal activity, and it must be 'reasonably related in scope to the circumstances which justified the [detention] in the first place.'" *Hernandez v. Grant,* p. 8, Civ. No. 11-822 BB/SMV (D.N.M. August 24, 2012)(*citing Terry v. Ohio,* 392 U.S. 1, 21-22 (1968). "[T]he police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot' even if the officer lacks probable cause." *United States v. Sokolow,* 490 U.S. 1, 7 (1989). "When the officer has stopped a person based on reasonable suspicion of criminal activity, the officer may briefly detain the individual 'in order to determine his identity or to maintain the status quo momentarily while obtaining more information." *Oliver v. Woods,* 209 F.3d 1179, 1186 (10th Cir. 2000).

"In reviewing an investigatory stop for reasonable suspicion, we must consider 'the totality of the circumstances' of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Neff,* 681 F.3d 1134, 1138 (10th Cir. 2012)(citing *United States v. Arvizu,* 534 U.S. 266, 273 (2002). "[S]howing reasonable suspicion is a low burden that is generally easy for an officer to meet." *Sisneros v. Fisher,* 685 F.Supp.2d 1188, 1214 (D.N.M. 2010).

"The Tenth Circuit has expressly agreed that a police/citizen encounter that goes beyond the limits of a *Terry* stop is an arrest which must be supported by probable cause or consent to be valid." *Id.* at 1206. "Probable cause to arrest exists where, under the totality of the

circumstances, a reasonable person would believe that an offense has been committed by the person arrested." *Morris v. Noe,* 672 F.3d 1185, 1192 (10th Cir. 2012).

"Having decided that the encounter at issue constituted a *Terry* stop, the question becomes whether, as a matter of law, an individual subject to a *Terry* stop has the right to refuse to answer the officer's questions." *Koch,* 660 F.3d at 1242. "Thus, although *Hiibel* answered the question of whether an individual may be required to provide identification during the course of a *Terry* stop, the question of whether an individual may be required to answer other questions remains unsettled." *Id.* at 1243. "Indeed, Ms. Koch has pointed to no authority—nor could we find any—clearly establishing a right under the Fourth Amendment to refuse to answer an officer's questions during a *Terry* stop. " *Id.*

In the case at bar, the *Terry* stop was supported by reasonable suspicion and the arrest was supported by probable cause.

Plaintiff Kristian Pettine was briefly detained in order to investigate an alleged aggravated assault. It is undisputed that Defendant Jeremy Apodaca took a 911 call in which an "Estevan" pulled a gun on the victim. (Admitted Facts Nos. 1, 3, 4 & 8; Defendants' Material Facts No. 1) Defendant drove in the area in the immediate vicinity of the Northern New Mexico College to see if he could see anyone matching the suspect's description. (Defendants' Material Facts Nos. 3-4) It is also undisputed that "Estevan" was Plaintiff Kristian Pettine's step-son. (Defendants' Material Fact No. 2) At all times, "Estevan" had not returned to the crime scene and was otherwise still at large. (Admitted Fact No. 8) The investigation even explored the possibility of a Hate Crime. (Defendants' Material Fact No. 9) While Plaintiff Pettine was never suspected in the aggravated assault, the individual Defendants, nevertheless, acted well within their discretion by detaining her in order to preserve the status quo while they continued their

criminal investigation. (Defendants Material Facts Nos. 5-11) Accordingly, no genuine issue of a material fact exists that reasonable suspicion was present during this *Terry* stop. Summary judgment must be entered in Defendants' favor.

Furthermore, the reasonable suspicion evident under the totality of the circumstances ripened into probable cause—justifying in the arrest of Plaintiff Kristian Pettine. Plaintiff Pettine was charged with Resisting, Evading or Obstructing an Officer. The undisputed, material facts demonstrate that probable cause existed in support of this arrest. Upon Defendant Jeremy Apodaca's arrival Ms. Pettine said "there was no problem" and said "nothing" when asked questions during the investigation. (Defendants' Material Facts Nos. 8, 10) While in her intoxicated state, she became combative and uncooperative with the individual Defendants as they attempted to restrain Plaintiff Antonio Gallegos. (Admitted Material Facts Nos. 28-29; Defendants' Material Facts Nos. 10, 15-29) She even refused to tell the individual Defendants the identity of her child's father and refused to relinquish the child, which served as further obstruction to the underlying investigation. (Defendants' Material Facts Nos. 14, 30-31) Though never formally charged, the individual Defendants reasonably believed that Ms. Pettine may have committed Child Neglect. (Defendants' Material Facts Nos. 7, 12-18, 30, 32). The child was found to be walking in the hot sun, bare-footed and in a heavily soiled diaper. (Defendants' Material Facts Nos. 7, 12-14) A review of the relevant 10th Circuit authorities at the time of the arrest indicates no clearly established constitutional right allowing Plaintiff Pettine to refuse to answer questions concerning the identity of her child's father. Because no such constitutional right existed at the time of the arrest, a reasonable officer could believe that her refusal to answer amounted to obstruction. Hence summary judgment is proper, and Plaintiff Pettine's federal claims must be dismissed with prejudice on qualified immunity grounds.

**WHEREFORE**, the Defendants City of Espanola, Joe Martinez, Jeremy Apodaca, Robert Vigil, City of Espanola Officers and Supervisors John Does 1 through 10 respectfully request that the Court grant Partial Summary Judgment in their favor and against Plaintiff Kristian Pettine, and for such other and further relief as the Court deems just.

Respectfully submitted by:

Basham & Basham, P.C.

***/s/ Mark A. Basham***
Mark A. Basham
2205 Miguel Chavez, Suite A
Santa Fe, New Mexico 87505
505-988-4575
Fax: 505-992-6170
mbasham@bbpcnm.com
Attorneys for City Defendants

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 29th day of August, 2014, I filed the foregoing Defendants' Partial Motion for Summary Judgment against Plaintiff Kristian Pettine on Qualified Immunity Grounds which caused counsel of record to be served by electronic means or by US Mail, as more fully reflected on the Notice of Electronic Filing:

Nathaniel Thompkins
New Mexico Firm, L.L.C.
103 N. St. Francis Drive, Unit A.
Santa Fe, NM 87501
Attorney for Plaintiffs

***/s/ Mark A. Basham***
Mark A. Basham