IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ANTONIO GALLEGOS and KRISTIAN PETTINE,

    Plaintiffs,

v.                                        Case No. 12-CV-00224 JAP/KBM

**CITY OF ESPANOLA**, a municipal corporation,
**JOE MARTINEZ**, individually and in his official capacity;
**JEREMY APODACA**, individually and in his official capacity;
**ROBERT VIGIL**, individually and in his official capacity;
**CITY OF ESPANOLA OFFICERS and SUPERVISORS
JOHN DOES 1 THROUGH 10**, individually and in their official capacities,

    Defendants.

## DEFENDANTS' THIRD MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF ANTONIO GALLEGOS

**COME NOW** the Defendants City of Espanola, Joe Martinez, Jeremy Apodaca, Robert Vigil, City of Espanola Officers and Supervisors John Does 1 through 10, by and through their attorneys of record Basham & Basham, P.C. (Mark A. Basham & Joseph L. Romero), and hereby respectfully submit Defendants' Third Motion for Summary Judgment Against Plaintiff Antonio Gallegos on Qualified Immunity Grounds. Plaintiff Antonio Gallegos *pro se* was contacted for his concurrence to this motion, and he does not concur with this motion.

## INTRODUCTION

Plaintiff Antonio Gallegos' Third Amended Complaint [DOC 50] seeks monetary damages for federal civil rights violations and state law tort claims. Plaintiff Antonio Gallegos alleges a § 1983 claim for purported Fourth Amendment violations in connection with his arrest on July 31, 2010. However, the undisputed material facts show that Antonio Gallegos' arrest for Resisting, Evading or Obstructing a Police Officer (NMSA 1978 § 30-22-1) was supported

1

by probable cause. Furthermore, no genuine issue of a material fact exists that Plaintiff Gallegos ever suffered an actual injury in connection with any purported constitutional violation. In all respects, qualified immunity applies to the individual Defendants. And Plaintiffs' state law claims are not actionable under NMSA 1978 § 41-4-16 (A)&(B) of the New Mexico Tort Claims Act. Since no genuine issues of material fact exist, summary judgment must be granted in Defendants' favor, dismissing with prejudice Plaintiff Antonio Gallegos' Unlawful Arrest and Seizure and Excessive Force claims and all state-law claims.

## **PROCEDURAL HISTORY**

Plaintiffs' Third Amended Complaint was filed on May 5, 2013. [DOC 50]

On August 12, 2013, Plaintiffs Antonio Gallegos, Kristian Pettine and Andre Gallegos' Motion for Partial Summary Judgment and Memorandum in Support was filed. [DOC 68] The Response to Plaintiffs Antonio Gallegos, Kristian Pettine and Andre Gallegos' Motion for Partial Summary Judgment and Memorandum in Support was filed on August 30, 2013. [DOC 94] Plaintiffs filed their Reply in Support of their Motion for Partial Summary Judgment and Memorandum in Support on September 9, 2013. [DOC 95] In its 06/24/14 Memorandum Opinion and Order, the Court denied Plaintiffs' Motion for Partial Summary Judgment. [DOC 133]

On August 29, 2013, Defendants' Motion for Partial Summary Judgment Against Plaintiff Antonio Gallegos on Qualified Immunity Grounds was filed. [DOC 141] Plaintiff's Response to Defendants' Motion for Partial Summary Judgment Against Plaintiff Antonio Gallegos on Qualified Immunity Grounds was filed on October 7, 2014. [DOC 144] Defendants' Reply in Support of Their Motion for Partial Summary Judgment Against Plaintiff Antonio Gallegos on Qualified Immunity Grounds was filed on October 27, 2014. [DOC 146]

In its 10/30/14 Memorandum Opinion and Order, the Court denied Defendants' Motion for Partial Summary Judgment Against Plaintiff Antonio Gallegos on Qualified Immunity Grounds. [DOC 153]

In its 02/18/15 Order, the Court set a new motions for summary judgment deadline for March 30, 2015. [DOC 224]

**ADMITTED FACTS FROM PLAINTIFFS ANTONIO GALLEGOS, KRISTIAN PETTINE AND ANDRE GALLEGOS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT**
**(hereinafter "Plaintiffs' Admitted Material Facts")**

Material Fact No. 1.  On July 31, 2010, Defendant Jeremy Apodaca ("Apodaca") was dispatched to Plaintiffs' home located at 1201 A North Paseo De Onate in reference to a 911 call regarding aggravated assault.  [DOC 68, p. 6] [DOC 94, p. 9]

Material Fact No. 3.  Defendant Apodaca was also advised by dispatch that the suspect had left the scene with a "black in color handgun" or "pistol".  *Id.*

Material Fact No. 4.  Defendant Apodaca and Defendant Robert Vigil ("Vigil") conducted an investigation of the 911 call and questioned Antonio Gallegos, Kristian Pettine and the victim, Alfonso Gurule, for close to one hour.  *Id.*

Material Fact No. 8.  Defendant Apodaca had a concern that Estevan (the alleged suspect) had left the scene and was walking around with a hand gun.  [DOC 68, p. 7] [DOC 94, p. 9]

Material Fact No. 12.  Defendant Apodaca after speaking with the victim, Alfonso Gurule, stopped investigating the aggravated assault 911 call and began focusing on Mr. Gallegos.  *Id.*

Material Fact No. 13.  During the course of Defendant Apodaca's investigation, he ordered Mr. Gallegos to "stand there by my police car."  *Id.*

Material Fact No. 18.  Defendant Vigil physically placed himself in front of Mr. Gallegos and prevented him from entering his home. … Defendant Vigil testified that, "I got in front of Mr. Gallegos and I stopped him.  I told him you can't go back in."  *Id.*

Material Fact No. 27.  Defendant Apodaca arrested Mr. Gallegos and charged him with (1) Battery Upon a Peace Officer and (2) Resisting, Evading or Obstructing an Officer.  [DOC 68, p. 9] [DOC 94, p. 9]

**ADMITTED FACTS FROM DEFENDANTS' FIRST MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST PLAINTIFF ANTONIO GALLEGOS ON QUALIFIED IMMUNITY GROUNDS
(hereinafter "Defendants' Admitted Material Facts")**

10. Mr. Gallegos thought the Officer might be a customer, so he went outside and asked Officer Vigil if he could help him.  [DOC 144, p. 8]

11. The Officer advised Mr. Gallegos that "there was a 911 call" and "…somebody had pulled a gun on somebody else."  *Id.*

12. Mr. Gallegos advised the Officer that he didn't know anything about the 911 call.  *Id.*

13. Mr. Gallegos questioned the victim Mr. Gurule and asked whether he saw Estevan with a gun.  *Id.*

15. Mr. Gallegos then said to Officer Vigil, "… obviously there is not anything going on here.  Somebody made a call saying there was a gun and now he [Alfonso Gurule] is saying no, and he doesn't know."  *Id.*

16. Mr. Gallegos then said, "[s]o there's nothing here, there is no reason for you to stay here … I have to go to work, I have to take care of my business, and I appreciate if you guys just left."  *Id.*

17. Mr. Gallegos started to walk towards his office to go back to work.  *Id.*

23. Based on Mr. Gallegos' anger, volatility and threats, Officers Apodaca and Vigil were concerned for their safety and "the safety of everybody involved" and had a reasonable basis to not want Gallegos to go into the home at that time. (Deemed admitted due to Plaintiff Antonio Gallegos' failure to respond to this particular Statement of Undisputed Material Facts.) [DOC 144, pp. 8-11]

24. Officers Apodaca and Vigil did not want Gallegos to be able to access any guns he said were in his house. (Deemed admitted due to Plaintiff Antonio Gallegos' failure to respond to this particular Statement of Undisputed Material Facts.) [DOC 144, pp. 8-11]

31. When the officers later entered the home, a rifle was found leaning against a wall in the master bedroom. Gallegos also testified there was a gun in the house and that he owns numerous firearms, some of which he has given to his sons. [DOC 144, p. 11]

32. Antonio Gallegos refused medical care from the ambulance attendants who came to the scene. Exhibit 1, p. 41: lines 10-17.

## **DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

1. When asked by Officer Robert Vigil if he had any guns in the house, Plaintiff Antonio Gallegos said that there were probably guns in the house/office. *See* Deposition of Antonio Gallegos; p. 51, lines 14-18, attached hereto as Exhibit 1; *see also* Deposition of Robert Vigil; p. 107, lines 2-3, 9-10, 13-17, attached hereto as Exhibit 2.

2. Plaintiff Gallegos admitted to having a .22 rifle in the house during the time of the complained-of incident. *See* Exhibit 1; p. 27, lines 13-19.

3. Plaintiff Gallegos attempted to return to his house despite Officer Jeremy Apodaca's instructions that he stand by the back of the patrol car. *See* Deposition of Jeremy Apodaca; p. 68, line 25; p. 69, lines 1-6, attached hereto as Exhibit 3.

4. Plaintiff Gallegos continued to walk towards the house despite Officer Vigil's commands that he could not go back into the house. *See* Exhibit 2; p. 111, lines 2-15; p. 112, lines 14-20; p. 115, lines 2-12.

5. While Officer Apodaca had no information that the gun used in the aggravated assault on Alfonso Gurule was in Gallegos' house, the gun had not been located. Exhibit 2, p. 105: lines 4-8, p. 107: lines 9-10.

6. By refusing to stop when commanded to do so, Officer Apodaca felt that Plaintiff Apodaca committed the offense of "resisting, evading or obstructing a police officer". *See* Exhibit 3; p. 70, lines 3-25; p. 71, lines 1-10.

7. In the entryway of the home, Officer Vigil got between Gallegos and the door. Gallegos aggressively shoved Officer Vigil. Exhibit 2, p. 115: lines 2-7, p. 117: line 1-3.

8. Officer Vigil used hand control techniques against Gallegos in an attempt to stop him and to handcuff him. Gallegos combatively resisted, resulting in Officer Apodaca applying a dry stun to Gallegos' left shoulder; Gallegos was then put into handcuffs. Exhibit 2, p. 117: lines 1-9.

9. During this encounter, Gallegos was dry-stunned three (3) times. See Exhibit 1, p. 36: lines 10-13, 25; p. 37, lines 1-2, 17-23; p. 38: lines 15-20.

10. The Officers ran after Gallegos only when he disregarded their commands to "stop". No force was used on Gallegos until after he forcibly shoved Officer Vigil and then resisted being handcuffed. Exhibit 3, p. 69: lines 4-15; Exhibit 2, p. 111: lines 2-19, p. 117: lines 1-25.

11. Plaintiff Gallegos was offered treatment for the stuns he received at the scene but he refused. *See* Exhibit 1, p. 41, lines 10-17.

12. Following the complained-of incident, Plaintiff Gallegos did not seek or was provided any medical attention. *See* Plaintiff Antonio Gallegos' Answers to City Defendants' First Set of Interrogatories No. 13, attached hereto as Exhibit 4.

13. Following the complained-of incident, Plaintiff Gallegos was photographed four (4) times. *See* Plaintiff Antonio Gallegos' Responses to Defendant City of Espanola's First Set of Request for Production No. 8, attached hereto as Exhibit 5.

14. Plaintiff Gallegos has alleged the following compensatory damages: physical pain and suffering from being Tasered by Defendants; emotional distress for being arrested without probable cause; pain and suffering endured during arrest; damages for false arrest and detention; and, damages for embarrassment and humiliation. *See* Plaintiff Antonio Gallegos' Answers to City Defendants' First Set of Interrogatories No. 14, attached hereto as Exhibit 4.

15. Plaintiff Gallegos has no bills for counseling or treatment for his alleged trauma and suffering as a result of the complained-of incident. *See* Plaintiff Antonio Gallegos' Responses to Defendant City of Espanola's First Set of Request for Production No. 7, attached hereto as Exhibit 5. *See also* Plaintiff Antonio Gallegos' Answers to City Defendants' First Set of Interrogatories No. 14, attached hereto as Exhibit 4.

16. On or about August 6, 2010, Defendant Joe A. Martinez met with Plaintiffs Antonio Gallegos and Kristian Pettine to investigate their citizen complaint. *See* Deposition of Joe A. Martinez, p. 77: lines 12-25; p. 81: lines 20-25; p. 82: lines 1-5; p. 89: lines 9-18, attached hereto as Exhibit 6. *See also,* Supplemental Report, attached hereto as Exhibit 7.

17. Defendant Martinez also met with Defendant Jeremy Apodaca, Defendant Robert Vigil and Public Service Officer Brian Martinez to investigate Plaintiffs' citizen complaint. *See* Exhibit 7.

18. Defendant Martinez then prepared a Supplemental Report recording his investigative findings regarding Plaintiffs' arrest on July 31, 2010. *See* Exhibit 6, p. 85: lines 13-17.

19. Defendant Martinez attached this Supplemental Report to the Uniform Incident Report prepared by Defendant Jeremy Apodaca. *See* Exhibit 6, p. 89: lines 17-18.

20. Defendant Martinez took no further action in connection with Plaintiffs' citizen complaint. *See* Exhibit 6, p. 82: lines 11-16; p. 114: lines 1-10.

21. On November 8, 2010, Plaintiffs Antonio Gallegos and Kristian Pettine sent via certified mail a Tort Claims Notice to the Mayor of Espanola. *See* Exhibit 8.

22. Ninety (90) days after July 31, 2010 was October 29, 2010.

## ARGUMENT

### A. QUALIFIED IMMUNITY & SUMMARY JUDGMENT STANDARD

A police officer is entitled to raise qualified immunity as a defense if (1) he was performing a discretionary function and (2) he did not violate a clearly established constitutional or statutory right of which a reasonable person in his position would have known. *Anderson v. Creighton,* 483 U.S. 635, 638-39, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). In other words, if a police officer reasonably believed that his actions were lawful in light of clearly established law and based upon all information available to him at the time, then he shall be immune from liability. *Davis v. Scherer,* 468 U.S. 183, 191, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). His reasonable belief, however, will be tested under an objective, rather than a subjective, standard. *Id.*

"The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular

conduct is clearly established. … Instead, for any court to reach a determination that a violation of clearly established law has taken place a "more particularized" inquiry is required. The court must ask whether 'every reasonable official would have understood that *what he [did]* violate[d] that right. … To satisfy this standard, '[w]e do not require a case directly on point,' but neither may a district court deny immunity unless 'existing precedent [has] placed the statutory or constitutional question *beyond debate.*'" *Kerns v. Bader,* 663 F.3d 1173, 1183 (10th Cir. 2011)(internal citations omitted).

However, the initial burden typically accorded to the moving party is shifted when the motion for summary judgment is based on qualified immunity. *See, Koch v. City of Del City,* 660 F.3d 1228, 1238 (10th Cir. 2011). Whenever a moving party asserts qualified immunity at the summary judgment phase, it is the non-moving party that bears the burden of showing that (1) the defendant violated a constitutional right, and (2) the right was clearly established at the time of the alleged unlawful activity. *Id.; Lundstrom v. Romero,* 616 F.3d 1108, 1118 (10th Cir. 2010) *citing Riggins v. Goodman,* 572 F.3d 1101, 1107 (10th Cir. 2009). "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment—showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. *Koch,* 660 F.3d at 1228 (internal quotations and citations omitted).

### B. UNLAWFUL ARREST AND SEIZURE

"The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Herrera v. City of Albuquerque,* 589 F.3d 1064, 1070 (10th Cir. 2009).

"In applying the Fourth Amendment's protections against unreasonable searches and seizures, the Supreme Court has recognized three types of police-citizen encounters: consensual encounters, investigative detentions, and arrests." *Koch,* 660 F.3d at 1238. "The Tenth Circuit has expressly agreed that a police/citizen encounter that goes beyond the limits of a *Terry* stop is an arrest which must be supported by probable cause or consent to be valid." *Id.* at 1206. "Probable cause to arrest exists where, under the totality of the circumstances, a reasonable person would believe that an offense has been committed by the person arrested." *Morris v. Noe,* 672 F.3d 1185, 1192 (10th Cir. 2012).

Here, Plaintiff Antonio Gallegos' arrest was supported by probable cause.

Plaintiff Gallegos was charged with Resisting, Evading or Obstructing an Officer. (Plaintiffs' Admitted Material Fact No. 27) For the Obstruction charge, Plaintiff Gallegos confronted the alleged victim, Alfonso Gurule, and unilaterally determined that there was nothing more to investigate. (Plaintiffs' Admitted Material Fact No. 12; Defendants' Admitted Material Facts Nos. 9, 10, 11, 12, 13 & 15) Gallegos then instructed the individual Defendants to leave his property. (Defendants' Admitted Material Fact No. 16) Yet, at this time, "Estevan" had not returned to the crime scene or been found. (Plaintiffs' Admitted Material Fact No. 8) During this time period, Plaintiff Gallegos refused police commands to stay behind the police vehicle as he attempted to re-enter his home/business office, which by Gallegos' own admission housed a weapon. (Plaintiffs' Admitted Material Fact No. 13; Defendants' Admitted Material Facts Nos. 17 & 31; Defendants' Material Facts Nos. 1, 2, 3 & 4) Under these circumstances, the individual Defendants could have reasonably believed that Plaintiff Gallegos violated the law. (Defendants' Admitted Material Facts Nos. 23 & 24; Defendants' Material Facts Nos. 5 & 6)

Hence summary judgment is proper on qualified immunity grounds, and Plaintiff Gallegos' Fourth Amendment Unlawful Arrest and Seizure claims must be dismissed with prejudice.

### C. EXCESSIVE FORCE

"Qualified immunity shields government officials from liability were 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sisneros,* 685 F.Supp.2d at 1201 (D.N.M. 2010) *citing Pearson v. Callahan,* 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). "Qualified immunity operates to protect officers from the sometimes hazy border between excessive and acceptable force and to ensure that, before they are subjected to suit, officers are on notice that their conduct is unlawful." *Fancher v. Barrientos,* p. 13, No. Civ. 11-118 LH/LAM (D.N.M. June 13, 2012) *citing Saucier v. Katz,* 533 U.S. 194, 206, 150 L.Ed.2d 272 (2001).

The question of whether the officers' use of force is objectively reasonable is analyzed in light of the facts and circumstances confronting the officers, without regard to their underlying intent or motivation. *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Factors to consider in evaluating the reasonableness of the amount of force used are (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Id.* at 396.

The reasonableness of the particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Id.* The determination of reasonableness must allow for the fact that police officers are often forced to

make split-second judgments, in circumstances that are tense, uncertain, and rapidly evolving, about the amount of force that is necessary in a particular situation. *Id.* at 396-97.

### 1. Constitutional Violation

"[I]t is excessive to use a Taser to control a target without having any reason to believe that a lesser amount of force—or a verbal command—could not exact compliance." *Casey v. City of Federal Heights,* 509 F.3d 1278, 1286 (10th Cir. 2007)(*citing Draper v. Reynolds,* 369 F.3d 1270, 1276-78 (11th Cir. 2004)(In *Draper,* taser use "reasonably proportionate" to situation where truck driver was belligerent and hostile and refused commands when asked to provide insurance information.) *See, Porro v. Barnes,* 624 F.3d 1322, 1329 (10th Cir. 2010)("The use of tasers in at least some circumstances—such as in a good faith effort to stop a detainee who is attempting to inflict harm on others—can comport with due process."). In a case directly on point, *Hinton v. City of Elwood,* 997 F.2d 774, 776-7, 781 (10th Cir. 1993), the Court held "electrical stun gun" use not excessive when man ignored warnings, shoved officer and actively resisted arrest.

"A reasonable officer need not await the glint of steel before taking self-protective action; by then, it is often too late to take safety precautions." *Estate of Larsen ex. rel. Sturdivan v. Murr,* 511 F.3d 1255, 1260 (10th Cir. 2008).

### 2. Application of law to case facts

The *Graham* factors all weigh in Defendants' favor.

The first *Graham* factor looks at the severity of the crime that formed the basis of the arrest. Here, Plaintiff Antonio Gallegos was arrested for Battery on a Peace Officer. (Plaintiffs' Admitted Material Fact No. 27) Plaintiff Gallegos was dry-stunned three (3) times after he

shoved Defendant Robert Vigil as he attempted to re-enter his home/business office. (Plaintiffs' Admitted Material Fact No. 18; Defendants' Material Facts Nos. 7, 8, 9 & 10)

The second *Graham* factor delves into whether a plaintiff posed an immediate threat to officers and others. Ample evidence supports this finding in Defendants' favor. It is undisputed that Plaintiff Gallegos informed the officers that "the only guns were in his house" and that a .22 rifle was found inside the house following his arrest. (Defendants' Admitted Material Facts Nos. 24 & 31; Defendants' Material Facts Nos. 1 & 2) Also, Plaintiff Gallegos obstructed Officers Apodaca and Vigil when he unilaterally decided that there was nothing more to investigate. (Plaintiffs' Admitted Material Facts Nos. 1, 3, 4 & 8; Defendants' Admitted Material Facts Nos.10, 11, 12, 13, 15 & 16) Gallegos then refused police commands to stay behind the police vehicle as he attempted to re-enter his home/business office. (Plaintiffs' Admitted Material Facts Nos. 13 & 18; Defendants' Admitted Material Fact No. 17; Defendants' Material Facts Nos. 3 & 4) By disregarding lawful orders to stop and by attempting to re-enter a dwelling in which a weapon was located, the individual Defendants could reasonably believe that their own safety as well as the safety of others were threatened. (Defendants' Admitted Material Facts Nos. 23 & 24; Defendants' Material Fact No. 5)

The third *Graham* factor focuses on whether the plaintiff resisted arrest. Again, the complained-of "dry-stun" Taser use occurred after Plaintiff Antonio Gallegos was taken down by the individual Defendants. (Defendants' Material Facts Nos. 7, 8, 9 & 10) Plaintiff Gallegos continued to struggle while on the ground. *Id.* And the dry stuns were employed only after Gallegos actively resisted attempts to be hand-cuffed. *Id.* Throughout this time, verbal commands directed towards Gallegos did not exact compliance and he continued to be non-cooperative. (Plaintiffs' Admitted Fact No. 13; Defendants' Admitted Material Fact No. 17;

Defendants' Material Facts Nos. 3 & 4) Accordingly, the force used was proportionate to the circumstances. *See Hinton,* supra.

### 3. Actual Injury

Plaintiff Antonio Gallegos suffered no actual injury to establish any constitutional violation. "We believe that a claim of excessive force requires some actual injury that is not de minimis, be it physical or emotional." *Cortez v. McCauley,* 478 F.3d 1108, 1129 (10th Cir. 2007). During the complained-of incident, Gallegos was taken to the ground, dry-stunned three (3) times and handcuffed. (Defendants' Material Facts Nos. 7, 8, 9 & 10) However, any injuries associated with Gallegos' arrest can only be characterized as de minimis at best. Gallegos refused medical assistance from ambulance personnel while at the scene. (Defendants' Admitted Material Fact No. 32; Defendants' Material Fact No. 11) Since his arrest, Gallegos never sought medical treatment for his complained-of physical injuries. (Defendants' Material Fact No. 12) Even photographs depicting Gallegos' Taser marks are unremarkable in terms of severity. (Defendants' Material Fact No. 13) After all, Tasers are not as severe when used in dry-stun as opposed to dart-mode.

> A taser has two functions, "dart mode" and "drive stun mode." In dart mode, a taser shoots probes into a subject and overrides the central nervous system. In drive stun mode, the operator removes the dart cartridge and pushes two electrode contacts located on the front of the taser directly against the victim. In this mode, the taser delivers an electric shock to the victim, but it does not cause an override of the victim's central nervous system. … Drive stun mode is used as a pain compliance tool with limited threat reduction.

*Estate of Booker v. Gomez,* 745 F.3d 405, 414 n. 10 (10th Cir. 2014). Gallegos has incurred no bills for counseling treatments for any alleged emotional distress (Defendants' Material Fact No. 15) and has produced no evidence of humiliation or embarrassment. Since the close of discovery, Gallegos has presented nothing that rises above the level of a de minimis injury.

Without an actual injury, Gallegos' Fourth Amendment claim for excessive force is insufficient as a matter of law.

As a result, the Defendants are entitled to qualified immunity on Plaintiff Antonio Gallegos' excessive force claim.

### D.     TORT CLAIMS ACT

In pertinent part, NMSA 1978 § 41-4-16 (A)&(B) of the New Mexico Tort Claims Acts states:

> A.  Every person who claims damages from the state or any local public body under the Tort Claims Act [41-4-1 NMSA 1978] shall cause to be presented to … the mayor of the municipality for claims against the municipality, … within ninety days after an occurrence giving rise to a claim for which immunity has been waived under the Tort Claims Act, a written notice stating the time, place and circumstances of the loss or injury.
> B.  No suit or action for which immunity has been waived under the Tort Claims Act shall be maintained and no court shall have jurisdiction to consider any suit or action against … any local public body unless notice has been given as required by this section, or unless the governmental entity had actual notice of the occurrence.

"The standard for actual notice under Section 41-4-16(B) is not simply actual notice of the occurrence of an accident or injury. … Nor does actual notice under Section 41-4-16(B) require that the notice of a claim indicate that a lawsuit will in fact be filed against the state, but rather, that the state must be given notice of a likelihood that litigation may ensue, in order to reasonably alert the state to the necessity of investigating the merits of a potential claim. *Callaway v. New Mexico Dep't of Corrs.,* 1994-NMCA-049, ¶ 5, 117 N.M. 637, 875 P.2d 393 (internal citations omitted).

"[W]e [the New Mexico Supreme Court] held that actual notice for purposes of the Tort Claims Act means actual notice of the tort." *Lopez v. State,* 1996-NMSC-071, ¶ 9, 122 N.M.

611, 930 P.2d 146. "Receipt of a police report could provide actual notice 'only where the report contains information which puts the governmental entity allegedly at fault on notice that there is a claim against it,' thereby satisfying the statutory purpose ''to ensure that the agency allegedly at fault is notified that it may be subject to a lawsuit.''" *Id.*

"Mere notice of an accident will not necessarily put the government entity on notice that it may become the defendant in a lawsuit." *Marrujo v. New Mexico State Highway Transp. Dep't,* 1994-NMSC-116, ¶ 26, 118 N.M. 753, 887 P.2d 747 (Two Uniform Accidents Reports filed by police did not constitute actual notice under Section 41-4-16(B)).

In the case at bar, the complained-of incident giving rise to this lawsuit occurred on July 31, 2010. (Defendants' Material Fact No. 18) To comply with the ninety (90) day requirement contained in NMSA 1978 § 41-4-16(A), Plaintiff must have served their Notice of Tort Claim Act letter no later than October 29, 2010. (Defendants' Material Fact No. 22) They did not. Instead the undisputed material facts indicate that Plaintiffs' Notice of Tort Claim Act letter was sent on November 8, 2010. (Defendants' Material Fact No. 21) As such, Plaintiffs' state law claims are barred as untimely, and summary judgment in Defendants' favor is appropriate.

Likewise, no genuine issue of a material fact exists as to whether Defendants received actual notice of a tort. As the New Mexico Supreme Court stated in *Lopez* and *Marrujo,* the mere happening of the complained event does not satisfy the actual notice requirement. In addition, the holdings in these two reported decisions clearly state that the generation of a police report, without more, constitutes actual notice. Here the Supplemental Report associated with Plaintiffs' July 31, 2010 arrest does not provide the requisite actual notice. The Supplemental Report was created in response to a citizen complaint. (Defendants' Material Fact Nos. 16, 17 & 18). The Supplemental Report was not prepared in anticipated of litigation or to investigate a

possible tort action because no further action was taken with respect to the Report's findings. (Defendants' Material Fact No. 20). To the contrary, the Supplemental Report was only attached to the Uniform Incident Report. (Defendants' Material Fact No. 19) Accordingly, dismissal with prejudice of all Plaintiffs' state law claims is proper.

**WHEREFORE**, the Defendants City of Espanola, Joe Martinez, Jeremy Apodaca, Robert Vigil, City of Espanola Officers and Supervisors John Does 1 through 10 respectfully request that the Court grant Summary Judgment in their favor and against Plaintiff Antonio Gallegos, and for such other and further relief as the Court deems just.

Respectfully submitted by:

Basham & Basham, P.C.

*/s/ Mark A. Basham*
Mark A. Basham
Joseph L. Romero
2205 Miguel Chavez, Suite A
Santa Fe, New Mexico 87505
505-988-4575
Fax: 505-992-6170
mbasham@bbpcnm.com
*Attorneys for City Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 20th day of March, 2015, I filed the foregoing Defendants' Third Motion for Summary Judgment against Defendant Antonio Gallegos which caused counsel of record to be served by electronic means or by US Mail, as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Antonio B. Gallegos | Kristian Pettine |
| 2111 Calle Ensenada | 3504 Anderson Ave., S.E. |
| Santa Fe, NM 87505 | Albuquerque, NM 87106 |
| 505-470-0572 | Plaintiff *pro se* |
| Plaintiff *pro se* | |

*/s/ Mark A. Basham*
Mark A. Basham