**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**ANTONIO GALLEGOS** and
**KRISTIAN PETTINE**,

Plaintiffs,

v.                                                            No. 12-CV-224 JAP/KBM

**CITY OF ESPANOLA**, a municipal corporation;
**JOE MARTINEZ**, individually and in his official
capacity; **JEREMY APODACA**, individually and in
his official capacity; **ROBERT VIGIL**, individually
and in his official capacity; **CITY OF ESPANOLA**
**OFFICERS** and **SUPERVISORS JOHN DOES** 1
through 10, individually and in their official
capacities,

Defendants.

**MEMORANDUM OPINION AND ORDER**

On March 20, 2015, Defendants filed DEFENDANTS' THIRD MOTION FOR

SUMMARY JUDGMENT AGAINST PLAINTIFF ANTONIO GALLEGOS (Motion for

Summary Judgment) (Doc. No. 228). On April 30, Plaintiff Antonio Gallegos filed a

RESPONSE (Doc. No. 235) opposing the Motion for Summary Judgment. On May 14, 2015,

Defendants filed a REPLY (Doc. No. 236). For the following reasons, the Court will grant in part

and deny in part the Motion for Summary Judgment.

**I.        Background**

On July 31, 2010, Defendants Apodaca and Vigil went to Plaintiffs' mobile home sales

office (which Plaintiffs also used as a residence)[1] to investigate a reported assault. Alfonso

Gurule, Plaintiffs' guest, had called 911 after Plaintiff Gallegos's son, Estevan Gallegos,

threatened him with a handgun. Defendants Apodaca and Vigil essentially detained Plaintiff

---

[1] In his RESPONSE (Doc. No. 235), filed *pro se*, Plaintiff Gallegos maintains that the area was more office than
home.

Gallegos to question Plaintiff Gallegos about his son's whereabouts. When Plaintiff Gallegos refused to obey the police officers' verbal commands to stay outside Plaintiffs' mobile home office-cum-residence, the situation quickly escalated. The parties dispute who initiated physical force, but whatever happened, Defendant Apodaca 'drive stunned' Plaintiff Gallegos three times with a Taser,[2] after which point Plaintiffs Gallegos and Pettine[3] were arrested and taken to jail.

## II.    Legal standards

### A.    Standard for evaluating a motion for summary judgment under Fed. R. Civ. P. 56

Under the Federal Rules of Civil Procedure, summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The party seeking summary judgment bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation marks omitted). Once the movant meets this burden, Rule 56 requires the non-moving

---

[2] The English-language Wikipedia states that

> [s]ome Taser models, particularly those used by police departments, also have a 'Drive Stun' capability, where the Taser is held against the target without firing the projectiles, and is intended to cause pain without incapacitating the target. 'Drive Stun' is the process of using the EMD (Electro Muscular Disruption) weapon as a pain compliance technique. This is done by activating the Taser and placing it against an individual's body. This can be done without an air cartridge in place or after an air cartridge has been deployed."

*Taser – Function – Drive Stun*, WIKIPEDIA: THE FREE ENCYCLOPEDIA (May 13, 2015), http://en.wikipedia.org/w/index.php?title=Taser&oldid=662118570 (quotation, alteration omitted).

[3] Plaintiff Pettine has dismissed her claims against Defendants Martinez, Apodaca, and Vigil. *See* Doc. No. 231. However, the Court notes that Plaintiff did not agree to dismiss her claims against the City of Española and Officers and Supervisors John Does 1 through 10. *See id.* Although Defendants contend that this was Plaintiff Pettine's intent, *see* Doc. No. 239, the Court will not conclude Plaintiff Pettine intended to dismiss *all* of her claims until Plaintiff Pettine files a dismissal of all claims.

party to designate specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). In considering a motion for summary judgment, then, the Court's "role is simply to determine whether the evidence proffered by plaintiff would be sufficient, if believed by the ultimate factfinder, to sustain her claim." *Foster v. Alliedsignal, Inc.*, 293 F.3d 1187, 1195 (10th Cir. 2002).

B. Standard for granting summary judgment on the basis of qualified immunity

When a defendant raises the defense of qualified immunity at summary judgment, courts engage in a two-pronged inquiry. See *Tolan v. Cotton*, ⸻ U.S. ⸻, 134 S.Ct. 1861, 1865, 188 L.Ed.2d 895 (2014) (per curiam). "The first [prong] asks whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right." *Id.* (alterations omitted). "The second prong…asks whether the right in question was 'clearly established' at the time of the violation." *Id.* at 1866. "[U]nder either prong" of the qualified immunity inquiry, "courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *See id.*

## III. Discussion

A. Undisputed material facts

The following facts are not in dispute. On July 31, 2010, Defendant Apodaca, a police officer employed by Defendant City of Española, was dispatched to Plaintiff's "home/business" to investigate a reported "assault." Motion at 3, Doc. No. 144 at 1. The dispatcher advised Defendant Apodaca that a man named "Estevan" had threatened the victim, Alfonso Gurule, with a weapon. Incident Report (Doc. No. 68-1) at 1. The dispatcher told Defendant Apodaca that "[Estevan] had left the scene with a 'black in color handgun' or 'pistol'." Motion at 3; Doc.

No. 144 at 2. The dispatcher told Defendant Apodaca that the suspect was walking south towards New Mexico Community College. Doc. No. 144 at 2; Doc. No. 94 at 9.

Defendant Apodaca testified that he drove to Plaintiffs' business-cum-residence by way of the road to the Community College and did not observe anyone matching the dispatcher's description of the suspect. Doc. No. 94 at 9. After arriving at Plaintiffs' "home/business," Defendant Apodaca and Defendant Robert Vigil (also a police officer employed by Defendant City of Española) began questioning the individuals present about the reported assault. Motion at 3. Defendant Apodaca was concerned that the suspect had "left the scene and was walking around with a hand gun." Motion at 3; Doc. No. 68 at 7.

Defendant Apodaca smelled alcohol on Plaintiff Pettine, who was slurring her words, yelling, and having difficulty standing up. Doc. No. 139 at 4; Doc. No. 144 at 8 ¶ 1. Plaintiff Pettine admitted that she had consumed a "couple" of alcoholic beverages. Doc. No. 139 at 5; Doc. No. 144 at 8 ¶ 3. Officer Apodaca asked if there was anyone else in the home, at which point Plaintiff Gallegos and his stepson, Andre, stepped out of the house. Doc. No. 139 at 5; Doc. No. 144 at 8 ¶ 3. Plaintiff Gallegos "thought [Defendant Vigil] might be a customer, so he went outside and asked [Defendant] Vigil if he could help him." Motion at 3; Doc. No. 144 at 2. Plaintiff Gallegos was "highly intoxicated, as were the rest of the adults at the scene. Andre [Gallegos] was sober." Doc. No. 139 at 5; Doc. No. 144 at 8 ¶ 3.

Defendant Vigil told Plaintiff Gallegos that "there was a 911 call" and that "somebody had pulled a gun on somebody else." Motion at 4; Doc. No. 144 at 8. Plaintiff Gallegos responded that he knew nothing about the 911 call, and asked Mr. Gurule whether he had seen his son Estevan with a gun. *Id.* Mr. Gurule then said "no, I don't know." *Id.* Plaintiff Gallegos

then told Defendant Vigil that "obviously there is not anything going on here. Somebody made a call saying there was a gun and now [Mr. Gurule] is saying no, and he doesn't know." *Id.*

Defendant Vigil asked Plaintiff Gallegos if there were any guns in the house, to which Plaintiff Gallegos responded that there "probably were" guns in the house. Motion at 5 ¶ 1. Plaintiff Gallegos's "anger, volatility and threats" caused Defendants Apodaca and Vigil to be concerned about their safety and "the safety of everybody involved." Motion for Summary Judgment at 5 ¶ 23; Doc. No. 141 at 6; Doc. No. 144 at 10 ¶ 6. Defendant Apodaca ordered Plaintiff Gallegos to stand by Apodaca's police cruiser. Motion at 3; Doc. No. 68 at 7. Plaintiff Gallegos ignored the order and tried to reenter his home. Motion at 4; Doc. No. 68 at 8. Defendant Vigil interposed himself between Plaintiff Gallegos and the entrance to his home, telling Plaintiff Gallegos that he was not allowed to go back into his home. Motion at 4; Doc. No. 68 at 8. A struggle ensued. Defendants Apodaca and Vigil tussled with Plaintiff Gallegos in an effort to subdue and handcuff him. Defendant Apodaca "drive stunned" Plaintiff Gallegos three times with his Taser. Motion at 6.

B.    Disputed material facts

Plaintiff Gallegos contends that although he ignored Defendant Apodaca's first set of orders to remain by the police cruiser, he "stopped at the top of the stairs" to his home after Defendant Vigil "ran up behind me, and said stop." Doc. No. 144 at 9. In other words, Plaintiff Gallegos contends that he obeyed Defendant Apodaca's order, but Defendants physically subdued Plaintiff Gallegos and 'drive stunned' him anyway. *Id.* Defendants, on the other hand, maintain that after Defendant Vigil ordered Plaintiff Gallegos to stop and got between Plaintiff Gallegos and the entrance to the home, Plaintiff Gallegos "aggressively shoved Officer Vigil." Motion at 6.

C.     Plaintiff Gallegos's claims against Defendants

Count I of Plaintiffs' Third Amended Complaint (Doc. No. 50) asserts a claim under "42 U.S.C. § 1983 against Defendants…for violations of [Plaintiff Gallegos's] constitutional rights under color of law." Doc. No. 50 at 9. This Court has read Count I to assert that Defendants unlawfully seized Plaintiffs. *See* Doc. No. 133 at 3. Count II asserts a claim for "assault and battery" against Defendants Apodaca and Vigil. Third Amended Complaint at 9. In Count III, Plaintiff Gallegos claims Defendants used excessive force against him in violation of the Fourth Amendment. *Id.* at 10. Count IV asserts claims for false imprisonment against Defendants Apodaca and Vigil. Count V asserts that Defendant City of Española is liable for Plaintiffs' injuries because they stem from a policy or practice of negligent hiring and supervision of police officers. *Id.* at 10–11. Count VI asserts a claim for "malicious abuse of process" against the City of Española for the (subsequently dismissed) criminal charges filed against Plaintiffs after their arrests. *Id.* at 12–13. Finally, Count VII asserts a claim for "punitive damages" against Defendants Apodaca and Vigil based on these defendants' allegedly "intentional, wanton[,] and reckless" violation of Plaintiffs' constitutional rights.

D.     Defendants' Motion for Summary Judgment

i.     Whether Defendants are entitled to summary judgment on Counts I, II, and IV of the Amended Complaint because they had probable cause to arrest Plaintiff Gallegos for violating 1978 N.M.S.A., Section 30-22-1(B)

Defendants argue the Court should enter summary judgment on Counts I and IV of the Amended Complaint (Plaintiff Gallegos's unreasonable seizure and false imprisonment claims against Defendants Apodaca and Vigil) because Defendants Apodaca and Vigil reasonably

believed they had probable cause to arrest Plaintiff Gallegos for "resisting, evading or

obstructing" a police officer in violation of 1978 N.M.S.A., Section 30-22-1(B).

> Resisting, evading or obstructing an officer consists of…intentionally fleeing, attempting to evade or evading an officer of this state when the person committing the act of fleeing, attempting to evade or evasion has knowledge that the officer is attempting to apprehend or arrest him…or resisting or abusing any judge, magistrate or peace officer in the lawful discharge of his duties."

1978 N.M.S.A. § 30-22-1(B) (1981).

Defendants argue that they had probable cause to arrest Plaintiff Gallegos because

Gallegos (1) "confronted the alleged victim…and unilaterally determined that there was nothing

more to investigate[;]" (2) "instructed the individual Defendants to leave his property[;]" and (3)

"refused police commands to stay behind the police vehicle as he attempted to re-enter his

home/business office, which by [Plaintiff's] own admission housed a weapon." Motion for

Summary Judgment at 10.

There is no dispute that Plaintiff Gallegos knew Defendants Apodaca and Vigil were

police officers. Thus, whether Apodaca and Vigil had probable cause to arrest Gallegos depends

on whether they can show that Gallegos intentionally fled, attempted to evade, or evaded them

with knowledge that Defendants were attempting to arrest or apprehend him.

In *State v. Gutierrez*, 162 P.3d 156, 142 N.M. 1 (N.M. 2007), the New Mexico Supreme

Court held that Section 30-22-1(B) permits a police officer to arrest someone for resisting an

investigative detention under *Terry v. Ohio*, 392 U.S. 1 (1968). *See* 162 P.3d at 166, 142 N.M. at

11. Accordingly, if officers Apodaca and Vigil could have reasonably detained Plaintiff Gallegos

in order to investigate ongoing criminal activity at the time of his arrest, there was probable

cause to arrest Plaintiff Gallegos when he ignored Apodaca's orders to remain by the police cruiser and not reenter his house.

*Walker v. City of Orem*, 451 F.3d 1139 (10th Cir. 2006) is somewhat analogous to this case. There, police officers detained the plaintiffs for 90 minutes after police shot and killed the plaintiffs' suicidal relative in their driveway. According to the allegations in the plaintiffs' complaint (the appeal was taken from the district court's denial of the officers' motion to dismiss based on qualified immunity), the officers shot the victim and then forced some plaintiffs into their home at gunpoint. Another plaintiff was detained in the back seat of a patrol car and then moved to the house. The plaintiffs did not consent to the detention, which prevented them from being with the victim of the shooting while he lay dying.

The *Walker* court first analyzed whether plaintiffs' complaint had established a Fourth Amendment violation. It held that under *Illinois v. Lidster*, 540 U.S. 419 (2004), a police officer may briefly detain potential witnesses to a crime in order to gather necessary information. *Walker*, 451 F.3d at 1148. Whether the detention is reasonable in turn depends on a fact-specific inquiry into "'the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty.'" *Id.* (quoting *Brown v. Texas*, 443 U.S. 47, 51 (1979)). A more intrusive detention may be justified when the officers have "greater reason to believe that one or more of the plaintiffs [have] specific information" about the crime being investigated. *Id.*

The court then noted that the officers had "greater reason" to believe the plaintiffs had specific information about the alleged crime, and therefore the public interest justified a more intrusive detention than, say, briefly stopping and questioning citizens at a vehicle checkpoint near the scene of a crime (the type of detention at issue in *Lidster*). *Id.* But the Court did not

analyze the character of the officers' detention of the plaintiffs because it found that the officers' 90-minute detention of the plaintiffs far exceeded any investigative detention appropriate under the circumstances. *Id.* at 1149. The Court found that because there was no evidence of any "exigencies" that would justify such a lengthy detention, the officers could only justifiably detain the witnesses for as long as it took to obtain identifying information and any statements the witnesses were willing to make. *Id.*

Although the officers had violated the plaintiffs' rights, the court found that the officers were entitled to qualified immunity because there were "no pertinent Supreme Court or Tenth Circuit decision prior to the events in question, and no clearly established weight of authority from other courts" that would have put the officers on notice that "interrogation of witnesses was subject to Fourth Amendment constraints at least as stringent as those involving detention of suspects[.]" *Id.* at 1151.

After *Walker*, of course, this is no longer the case. Accordingly, if Apodaca and Vigil violated Plaintiff Gallegos's Fourth Amendment rights by detaining him while they investigated the assault alleged by Gurule, Apodaca and Vigil's motion for summary judgment must be denied.

Plaintiff Gallegos has previously argued that "[t]here was no reason for Defendants, with the information they had, to hold Antonio and question him for over an hour." Doc. No. 144 at 16. In other words, the amount of time that passed between Apodaca and Vigil's arrival and the arrest was indisputably longer than necessary to obtain relevant information from witnesses of the reported assault, therefore rendering the seizure unreasonable.

But the undisputed material facts show that the encounter between Plaintiff Gallegos and Defendants Apodaca and Vigil was consensual at its inception. *See* Doc. No. 141-1 at 10–11.

According to Plaintiff Gallegos's own account, he voluntarily left his house to talk with the officers because he thought they were potential customers. *Id.* When the officers told him that they were investigating a reported assault, Plaintiff Gallegos continued to voluntarily respond to the officers' questions. In other words, at least some portion of the encounter was consensual; the very earliest it became a "seizure" was when Plaintiff Gallegos told the officers that "obviously there is not anything going on here. Somebody made a call saying there was a gun and now he is saying no, and he doesn't know" and then told officers "I would appreciate if you guys just left." *Id.* at 11, 13.[4]

The Court concludes that Apodaca and Vigil could have reasonably detained Plaintiff Gallegos after he asked them to leave his property. Plaintiff Gallegos concedes that the officers could enter the property (which was a business open to the public) and question witnesses about the assault; the only issue is whether or not the officers' suspicions were dispelled before they detained Plaintiff Gallegos. Plaintiff Gallegos's problem is that instead of dispelling the officers' reasonable suspicion, cajoling Gurule into saying that no assault had occurred and that there "was no gun" only heightened it. At that point, the officers would have had an additional justification for subjecting Plaintiff Gallegos to an investigative detention. While the officers began the encounter with little to tie Plaintiff Gallegos to the crime aside from his family relation with the suspect, his evasive conduct and apparent intimidation of Gurule justified additional questioning, both about Estevan's whereabouts and Plaintiff Gallegos's involvement in the alleged assault.

Since the officers could reasonably order Plaintiff Gallegos not to return to his house, Gallegos's decision to ignore that initial order gave them probable cause to arrest Plaintiff

---

[4] Plaintiff Gallegos had earlier suggested to Gurule that he and Estevan had merely "had words" and apparently coerced Gurule into saying that he "didn't know" whether Estevan had brandished a gun. *Id.* at 11–12.

Gallegos under 1978 N.M.S.A. § 30-22-1(B). Defendants are therefore entitled to summary judgment on Plaintiffs' claims arising from any allegation that Defendants seized him in violation of the Fourth Amendment. The Court will therefore enter summary judgment on Plaintiff Gallegos's unlawful arrest claim (Count I) and on his false imprisonment claim (Count IV).

Whether this reasoning likewise entitles Defendants to summary judgment on Count II (the assault and battery claims against Defendants Apodaca and Vigil) is a trickier question. Count II alleges that Defendants Apodaca and Vigil committed the state law torts of assault and battery on Plaintiff in effecting the arrest. Since the Court has concluded that Defendants Apodaca and Vigil had probable cause to arrest Plaintiff Gallegos, this would seem to entitle Defendants to summary judgment on Plaintiff Gallegos's assault and battery claims. *See State v. Kraul*, 90 N.M. 134, 318, 563 P.2d 108, 112 (Ct. App. 1977), *cert. denied*, 90 N.M. 637, 567 P.2d 486 (1977) ("An officer in making an arrest is privileged by statute to use only that force which is necessary to restrain the arrested person.").

But Plaintiff Gallegos's assault and battery claims do not necessarily depend on a jury finding that Defendants Apodaca and Vigil lacked probable cause to arrest Plaintiff Gallegos; a jury could find in Plaintiff Gallegos's favor if it concludes that Defendants used "more force than reasonably necessary to preserve the peace or effect [the] arrest." *Jonas v. Bd. of Comm'rs of Luna Cnty.*, 699 F.Supp.2d 1284, 1297 (D.N.M. 2010) (internal quotation marks omitted); *see also id.* (lawful arrest privilege to assault and battery claims is nearly identical to the federal standard for determining whether a police officer used excessive force in effecting an otherwise lawful arrest or detention). Because the Court concludes below that issues of fact preclude

summary judgment as to Plaintiff's excessive force claim, it follows that summary judgment as to Plaintiff Gallegos's state law assault and battery claims must also be denied.

    ii.    <u>Whether Defendants are entitled to summary judgment on Plaintiff Gallegos's excessive force claim in Count III of the Amended Complaint</u>

Defendants argue this Court should enter summary judgment on Plaintiff Gallegos's excessive force claim because (a) their use of force was objectively reasonable in the circumstances, and therefore they did not violate Plaintiff Gallegos's constitutional rights. That failing, Defendants argue that they are entitled to qualified immunity on Plaintiff Gallegos's excessive force claim because (b) the right at issue in this case was not clearly established at the time of his arrest. Finally, even assuming Defendants violated Plaintiff Gallegos's clearly established constitutional rights, Defendants contend that they are still entitled to summary judgment because (c) Plaintiff Gallegos suffered no actual injury as a result of the alleged violations.

    (a)    *Objective reasonableness of Officers Apodaca and Vigil's use of force*

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 20–22 (1968)). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

Whether a situation justifies a given use of force turns on the "totality of the circumstances[.]" *Id.* at 396 (quotation omitted). *Graham* mentions the following factors as a non-exclusive list of considerations relevant to the inquiry: (1) the severity of the crime at issue;

(2) whether the suspect posed an immediate threat to the safety of officers or others; and (3) whether the plaintiff is "actively resisting arrest or attempting to evade arrest by flight." *Id.* (citation omitted).

1. Severity of the crime at issue

Defendants contend that they were justified in physically subduing Plaintiff Gallegos and "drive stunning" him with a Taser three times because he was charged with battery on a police officer, a severe crime. Motion for Summary Judgment at 12–13. But as this Court has already noted (*see* Doc. No. 153 at 3), Plaintiff Gallegos has steadfastly denied that he ever shoved Officer Vigil. If Plaintiff Gallegos had been convicted of the charge, the Court could rely on the conviction to exclude Plaintiff Gallegos's denials. But since the charge was dismissed, Defendants may not use the uncontested fact that charges were filed to avoid the factual disputes underlying the charge.

To be sure, the Court has concluded that Defendants had probable cause to arrest Plaintiff Gallegos for resisting or evading an officer in violation of 1978 N.M.S.A. § 30-22-1 because he disobeyed Defendant Apodaca's order to remain by the vehicle and not return to his house. But this crime is a misdemeanor, and according to Plaintiff Gallegos's version of events, he ceased to ignore Defendants' orders before the officers subdued and 'drive stunned' him. Accordingly, the Court concludes that this *Graham* factor indicates that Defendants' use of force was not justified.

2. Whether Plaintiff Gallegos posed an immediate threat to the safety of officers or others

Defendants contend that the following facts show that Plaintiff Gallegos posed an immediate threat to their safety and the safety of others: (1) the officers believed Plaintiff Gallegos had guns inside his home; (2) Plaintiff Gallegos "obstructed" Officers Apodaca and

Vigil by "unilaterally decid[ing] that there was nothing more to investigate[;]" and (3) Plaintiff Gallegos refused commands to remain by the police vehicle. Motion for Summary Judgment at 13.

Viewing the facts in the light most favorable to Plaintiff Gallegos, the Court must assume that Plaintiff Gallegos obeyed Officer Apodaca's verbal command not to reenter his house, that he did not shove Officer Apodaca, and that the use of force stemmed entirely from the initial refusal to obey Officer Apodaca's order to stand by the police cruiser. It follows that Plaintiff Gallegos did not pose an immediate threat to the safety of officers or others. True, the officers believed Plaintiff Gallegos had a gun in his house, and he was walking toward his house. But in order for Plaintiff Gallegos to access his gun, he had to get through Officer Vigil. And while Officer Vigil maintains that Plaintiff Gallegos shoved him in order to try and get into his house, Plaintiff Gallegos claims that he did no such thing and obeyed the Officers' order not to try and re-enter his house. Accordingly, the Court cannot conclude that Plaintiff Gallegos presented an immediate danger at the time Defendants Apodaca and Vigil subdued and 'drive stunned' him.

      3.      Whether Plaintiff Gallegos was actively resisting arrest or attempting to evade arrest by flight

Defendants argue that Plaintiff Gallegos was actively resisting arrest when he was 'drive stunned' by Officer Apodaca. But Plaintiff Gallegos has consistently maintained that he did not resist arrest at all. Accordingly, the Court must find that there is a factual dispute about whether Plaintiff Gallegos was actively resisting arrest or attempting to evade arrest by flight.

4.      Summary

Defendants have presented evidence that supports a finding that Officer Apodaca and Officer Vigil's use of force was justified under all three *Graham* factors. Defendants point to evidence that Plaintiff Gallegos committed battery against Officer Vigil (a very serious offense), that Plaintiff Gallegos posed an imminent safety risk to the officers and the public, and that Plaintiff Gallegos was actively resisting arrest. But viewing other evidence in the record in Plaintiff's favor, as the current procedural posture of this case requires, a fact finder could conclude that the Officers' use of force was not justified under *Graham* because Plaintiff Gallegos did not commit a battery on Officer Apodaca, did not present any danger to the public, and did not resist arrest. In other words, there are genuine issues of material fact that prevent the Court from entering summary judgment on Plaintiff Gallegos's excessive force claims against Defendants.

(b)      *Whether Defendants are entitled to qualified immunity on Plaintiff's excessive force claims*

Defendants do not devote any discussion to the question of whether, assuming Defendants violated Plaintiff Gallegos's constitutional rights, that the right at issue was not clearly established at the time of the violation. True, in most cases the plaintiff bears the burden of pointing out "cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits" that show plaintiff's rights were clearly established at the time of the alleged violation. *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008). But in this case, Plaintiff Gallegos is no longer represented, and Defendants have already had a chance (on substantially the same record) to litigate this issue, and have come up short. *See* Doc. No. 153.

They come up short again. It was more or less clearly established by 2007 that a police officer may not use a stun gun on a suspect who is not fleeing and where the officer has no reason to believe that the suspect actually possesses a weapon. *See Cavanaugh v. Woods Cross City*, 625 F.3d 661, 666 (10th Cir. 2010) ("it was clearly established on December 8, 2006 that [a police officer] could not use his Taser on a nonviolent misdemeanant who did not pose a threat and was not resisting or evading arrest without first giving a warning."). This case is more or less on all fours with *Cavanaugh*, at least under Plaintiff Gallegos's account of his arrest: Plaintiff Gallegos had at most committed a misdemeanor at the time he was stunned, he did not have any weapons in his possession, and he was no longer resisting or otherwise disobeying the police officers' orders.

True, Plaintiff Gallegos  said he had a gun in his house, but that only means that Plaintiff Gallegos could only come into possession of a gun at some point in the future; not that he possessed a weapon at the moment Officers Apodaca and Vigil decided to subdue him. It follows, then, that Defendants are not entitled to qualified immunity because Plaintiff Gallegos has successfully described a violation of a constitutional right that was clearly established at the time he was arrested.

(c)     *Whether Plaintiff Gallegos suffered an actual injury as a result of the use of force*

Defendants contend that there is no evidence in the record that Plaintiff Gallegos suffered any actual damages. Motion for Summary Judgment at 14. Defendants next contend that even if there is evidence of damages, there is no evidence in the record that Plaintiff Gallegos suffered any more than *de minimis* injuries as a result of Officers Apodaca and Vigil's use of force. *Id.* Defendants offer the following facts in support of this conclusion: (1) Plaintiff Gallegos refused medical assistance from ambulance personnel dispatched to the scene of his arrest; (2) Since his

arrest, Plaintiff Gallegos has not obtained medical treatment for his physical injuries; (3) 'drive stun' use of a Taser (as opposed to 'dart mode' use) has no lasting effects beyond causing temporary pain in order to force an unruly suspect to stop resisting, *id.* (quoting *Estate of Booker v. Gomez*, 745 F.3d 405, 414 n.10 (10th Cir. 2014)); (4) Plaintiff Gallegos has "incurred no bills for counseling treatments for any alleged emotional distress[;]" and (5) Plaintiff Gallegos has produced no evidence of humiliation or embarrassment. Motion for Summary Judgment at 14.

1. Whether there is evidence that Plaintiff Gallegos suffered actual damages as a result of his arrest

Defendants first argue that there is no genuine dispute that Plaintiff Gallegos suffered no actual harm as a result of his arrest. It is true that besides the red marks caused by the Taser, there is little evidentiary support for Plaintiff Gallegos's claim that Officers Apodaca and Vigil caused him physical injuries and emotional distress. But this argument goes to the weight of the evidence of Plaintiff Gallegos's injuries, not a complete absence. Moreover, "proof of physical injury manifested by visible cuts, bruises, abrasions or scars, is not an essential element of an excessive force claim, though the absence of injury in the context of the totality of the circumstances may suggest the absence of excessive force." *Cortez v. McCauley*, 478 F.3d 1108, 1129 n.24 (10th Cir. 2007) (en banc) (citing *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1195 (10th Cir. 2001)). The Court has already found that under *Graham*, the totality of the circumstances (when viewed in Plaintiff Gallegos's favor) indicates Officer Apodaca and Officer Vigil's use of force was objectively unreasonable, and the pain caused by being drive stunned by a Taser three times speaks for itself. Evidence of injury, albeit minimal, simply provides greater support for this conclusion; it does not transmogrify the officers' unreasonable use of force to a reasonable use of force simply by dint of the severity of Plaintiff Gallegos's resultant injuries.

The unique procedural posture of this case also counsels against granting summary judgment based on a lack of evidence of damages. This is Defendants' third motion for summary judgment. While Plaintiff Gallegos had the benefit of the assistance of counsel in responding to Defendants' earlier motions, his attorney has suddenly withdrawn, leaving Plaintiff Gallegos alone at the altar of trial. This does not relieve Plaintiff Gallegos of the burden of showing a genuine issue of fact for trial, but it does counsel against uncritically accepting Defendants' argument that this Court may infer a lack of damages because Plaintiff Gallegos did not seek medical treatment and otherwise accept Defendants' citationless assertion that Plaintiff Gallegos "has produced no evidence of humiliation or embarrassment." Motion for Summary Judgment at 14.

       2.       Whether summary judgment should be entered on Plaintiff Gallegos's excessive force claims because his injuries were at most *de minimis*

Defendants next contend that even if there is evidence Plaintiff Gallegos suffered some damages from his encounter with Officers Apodaca and Vigil, summary judgment is nonetheless appropriate because the damages are *de minimis*. But a plaintiff alleging excessive force must show more than *de minimis* damages only when the claim alleges damages arises from allegedly improper or overtight handcuffing. *Fisher v. City of Las Cruces*, 584 F.3d 888, 897 (10th Cir. 2009) (en banc). Even if an excessive force plaintiff's claim arises from a police encounter in which the plaintiff was handcuffed, the *de minimis* injury requirement only applies to those injuries directly arising from the handcuffing, not injuries arising from "force independent of the handcuffing itself." *Id.* at 899 n.6. Even if Plaintiff Gallegos's injuries can be characterized as *de minimis*, the fact remains that those injuries arose from "force[s] independent of [Gallegos's]

18

handcuffing," *id.*, that is, being drive stunned three times and tackled to the ground by Officers Apodaca and Vigil.

    iii.    <u>Whether Defendants are entitled to summary judgment on Plaintiff Gallegos's claims under the New Mexico Tort Claims Act (Counts II, IV, and VI) because Plaintiff Gallegos did not file a notice of tort claim within 90 days of his arrest</u>

Defendants argue that they are entitled to summary judgment on Plaintiff Gallegos's claims under the New Mexico Tort Claims Act (TCA), 1978 N.M.S.A., Section 41-4-1 *et seq.* because Plaintiff Gallegos filed his notice of tort claim with the City of Española more than ninety days after his arrest. *See* 1978 N.M.S.A. § 41-4-16(A) (1977) ("Every person who claims damages from the state or any local public body under the Tort Claims Act shall cause…within ninety days after an occurrence giving rise to a claim for which immunity has been waived under the Tort Claims Act, a written notice stating the time, place and circumstances of the loss or injury.").

Plaintiff Gallegos asserts the following claims against Defendants under the TCA: (1) assault and battery against Defendants Apodaca and Vigil individually (Count II), *see* Doc. No. 50 at 9; (2) false imprisonment against Defendants Apodaca and Vigil individually (Count IV), and (3) malicious abuse of process against Defendant City of Española. *Id.* at 12–13. And it is undisputed that Plaintiff Gallegos filed his notice of tort claim on November 8, 2010, more than ninety days after Plaintiff's July 31, 2010 arrest. *See* Motion for Summary Judgment at 16.

As an initial matter, the Court notes that the TCA's notice requirement only applies to lawsuits against government entities, not individual public employees. *Niederstadt v. Town of Carrizozo*, 143 N.M. 786, 773, 182 P.3d 789, 790 (Ct. App. 2008). Accordingly, the Court will

deny the Motion for Summary Judgment as to Plaintiff Gallegos's assault and battery claims against Defendants Apodaca and Vigil.[5]

As to Plaintiff Gallegos's malicious abuse of process claim against the City of Española, the Court will grant the Motion for Summary Judgment. The Court notes that because it has found that Officers Apodaca and Vigil had probable cause to arrest Plaintiff Gallegos for resisting, evading, or obstructing an officer, Plaintiff Gallegos would be unable to prevail on a malicious abuse of process claim against the City of Española based on that charge in the absence of additional evidence of bad faith. But as to the battery on a peace officer charge, it was filed on August 2, 2010, rendering Plaintiff Gallegos's tort claim notice as to that charge untimely. Accordingly, the Court will enter summary judgment Plaintiff Gallegos's malicious abuse of process claim in its entirety.

    iv.    <u>Whether Defendants are entitled to summary judgment on Plaintiff Gallegos's punitive damages claims</u>

"Punitive damages can be awarded in § 1983 claims for excessive force 'only when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Montoya v. Shelden*, 898 F.Supp.2d 1279, 1297 (D.N.M. 2012) (quoting *Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1308 (10th Cir. 2003)). The TCA bars punitive damages awards against public employees. 1978 N.M.S.A. § 41-4-19(D) (2007).

Although New Mexico law prohibits the recovery of punitive damages for Plaintiff Gallegos's assault and battery claims against Defendants Apodaca and Vigil, Plaintiff Gallegos's excessive force claim furnishes a separate basis for an award of punitive damages. If Plaintiff

---

[5] Although this reasoning would also require denial of the Motion for Summary Judgment as to Count IV (the false imprisonment claim), the Court has already found that Defendants' motion for summary judgment will be granted as to Count IV because Defendants Apodaca and Vigil had probable cause to arrest Plaintiff Gallegos.

Gallegos is able to convince a jury that Defendant Apodaca needlessly 'drive stunned' him three times without any apparent justification, the jury could infer that Defendant Apodaca behaved with willful or reckless disregard for Plaintiff Gallegos's constitutional rights. The Court will therefore deny Defendants' motion for summary judgment as to Count VII of the Amended Complaint as to Defendant Apodaca. Since there is no corresponding basis in the record as to Defendant Vigil, however, the Court will enter summary judgment on Count VII as to Defendant Vigil.

## V.     Conclusion

IT IS ORDERED THAT Defendants' Motion for Summary Judgment is

(1)     GRANTED as to Count I of the Amended Complaint (unreasonable seizure against Defendants Apodaca and Vigil);

(2)     GRANTED as to Count IV of the Amended Complaint (false imprisonment against Defendants Apodaca and Vigil);

(3)     GRANTED as to Count VI of the Amended Complaint (malicious abuse of process against Defendant City of Española);

(4)     GRANTED as to Count VII of the Amended Complaint (punitive damages) as to Defendant Vigil; and

(5)     The Motion for Summary Judgment is otherwise DENIED.

_____

SENIOR UNITED STATES DISTRICT JUDGE